Hoyt C. CARGAL, Appellant,

v.

REVIEW BOARD OF the INDIANA EM-
PLOYMENT SECURITY DIVISION
and Indiana Employment Security Divi-
sion, Appellees.

No. 2–681A204.

Court of Appeals of Indiana,
Third District.

Nov. 25, 1981.

Rehearing Denied Jan. 7, 1982.

Nancy L. Cross, Patricia Smith, Judith Brooks, Legal Services Organization of Indiana, Inc., Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Gordon R. Medlicott, Deputy Atty. Gen., Indianapolis, for appellee.

STATON, Judge.

Hoyt C. Cargal appeals from the decision of the Indiana Employment Security Division Review Board denying him benefits under the Indiana Employment Security Act.[1]

On appeal, Cargal raises the following issues:[2]

(1) Was the Review Board's finding supported by sufficient evidence?

(2) Was he dismissed for "just cause?"

We affirm.

Cargal initially began working for the Indiana Employment Security Division (Division) as a claims deputy. As he had previously been a placement counsellor/interviewer[3] in Louisiana, Cargal requested to be transferred to this position with the Division. His boss denied his request.

A couple of weeks later, an interviewer informed Cargal's boss that she wished to be a claims deputy. Cargal was asked if he was still interested in switching jobs. He was. Cargal was assigned to interview and refer applicants in the fields of sales, domestics, and laundry.

Five months later, interviewers were reassigned to different job fields. Cargal, in addition to being the placement interviewer for sales, domestics, and laundry, was also assigned to be "backup interviewer" for liquor, movie, and dancing establishments.[4] Cargal immediately notified his superiors that he could not refer applicants to jobs in liquor, movie, or dancing establishments because of his religious convictions. He put these objections into writing after being

asked to do so. He was told that if he continued to object he would be discharged. Cargal continued to state that he could not do his assigned job; he was fired.

## I.

### Sufficient Evidence

■ The Review Board made the following conclusion:

"In this case, the evidence is conclusive that the claimant was in his probationary period with this employer. The evidence is also conclusive that the claimant was discharged because he notified his immediate supervisor that he would not be able to make referrals to liquor establishments, dancing establishments, or movie theatres. The referee can appreciate the religious and personal convictions of the claimant. However, the referee must conclude in this case that since the claimant knew that his job would consist of making referrals to all types of business establishments, he should have notified his supervisor prior to assuming the transfer to the employment service side of the Indiana Employment Security Division that he would not be able to make referrals to liquor establishments, movie theatres, and dancing establishments. The claimant's testimony that he inferred that management here in the local Marion office would know that he would not make referrals to these types of establishments is not credible."

Cargal argues that there is no evidence to support the conclusion that he knew he would have to make referrals to all types of businesses.

■ When reviewing the sufficiency of the evidence to support the Review Board's conclusion, this Court will not weigh the evidence; only that evidence most favor-

---

1. IC 22–4–1–1 et seq.

2. The issues have been combined and re-worded.

3. The official job title is an Employment Service Interviewer.

4. The "backup interviewer" did not attempt to place applicants in these fields unless the main interviewer was absent from the office.

able to the judgment and the reasonable inferences therefrom will be considered. *Forster v. Review Board of Indiana Employment Security Division* (1981), Ind.App., 420 N.E.2d 1287, 1291. We may reverse the decision of the Review Board only if reasonable men would be bound to reach the opposite conclusion from the evidence in the record. *Id.*

There is sufficient evidence to support the conclusions of the Review Board and reasonable men would not be bound to reach a conclusion opposite from the one reached by the Review Board. The evidence reveals that Cargal was aware that one interviewer serviced liquor, movie and dancing establishments but that he did not believe that he would have to be the one interviewer to handle these referrals. He based this belief upon his experiences as an interviewer in Louisiana; his fellow employees did not require him to handle such referrals because they knew him to be a Christian minister. Cargal admitted that he did not know how the Division would have known that his religious convictions would not permit him to handle referrals to liquor, movie, and dancing establishments.

## II.

### Just Cause

Cargal argues that he was not fired for just cause and is therefore eligible for unemployment benefits.[5] He argues that he did not have to obey instructions to make referrals to liquor, movie, and dancing establishments because his religious convictions prohibit him from doing so. He argues that he must be granted unemployment benefits since he was fired because of his religious convictions.

5. IC 1980, 22–4–15–1 disqualifies individuals fired for just cause.

6. IC 22–4–15–1.

7. We note that Cargal had the burden of proof in establishing that his objections are based upon his religion. *See, Id.* The Review Board assumed that Cargal had met this burden. The Division has not challenged this.

■■ The initial burden of proving that an employee was fired for just cause is on the employer. The burden then shifts to the employee to rebut the case made by the employer. *Id.* Cargal admits that the statutory definition of "discharge for just cause" includes refusing to obey instructions.[6] He argues that his refusal to perform some of his job duties is not just cause since his refusal was based upon his religious convictions.[7]

In *Thomas v. Review Board of the Indiana Employment Security Division* (1981), 450 U.S. 707, 101 S.Ct. 1425, 67 L.Ed.2d 624, Thomas, a Jehovah's Witness, was employed by a foundry and machinery company. He was hired to work in the roll foundry to fabricate sheet steel for a variety of industrial uses. One year later, the roll foundry was closed and Thomas was transferred to a department that fabricated turrets for military tanks. On his first day at his new job, Thomas realized that the work he was doing was weapons related. He also discovered that all the plant openings were directly related to weapons production. He asked for a layoff because he could not work on weapons without violating the principles of his religion. His request was denied; therefore he quit his job rather than violate his religious principles.

Thomas applied for unemployment benefits under the Indiana Employment Security Act. Thomas was found to have quit his job due to his religious convictions; however, the Review Board found that Thomas had not quit for good cause within the meaning of IC 22–4–15–1 and denied him benefits.

The U.S. Supreme Court[8] found that because of changed conditions Thomas was put in the position of either following his religious beliefs or quitting work. The Court further stated:

8. The Review Board was reversed by the Second District of this Court in *Thomas v. Review Board* (1978), Ind.App., 381 N.E.2d 888. The Supreme Court of Indiana vacated this Court's opinion in *Thomas v. Review Board* (1979), Ind., 391 N.E.2d 1127.

"Where the state conditions receipt of an important benefit [unemployment benefits] upon conduct proscribed by a religious faith, or where it denies such a benefit because of conduct mandated by religious belief, thereby putting substantial pressure on an adherent to modify his behavior and to violate his beliefs, a burden upon religion exists. While the compulsion may be indirect, the infringement upon free exercise [of religion] is nonetheless substantial." (brackets added)

*Thomas, supra,* at 1432. The Court held that Thomas could not be denied unemployment benefits.

The instant case does not fall within the ambit of *Thomas.* Cargal was aware that interviewers sometimes handle referrals to liquor, movie, and dancing establishments. Although he was aware of the possibility that he might be asked to violate his religious beliefs as an interviewer, he chose to believe that there was zero probability that he would have to do so. He asked to be transferred to this job classification and eventually was offered the job. He chose to accept it.

The work load among interviewers was initially divided such that Cargal did not handle liquor, movie, and dancing establishment referrals. Cargal argues that the shifting of the work load among interviewers, such that he became a back up interviewer for liquor, movie, and dancing establishment referrals, constitutes changed conditions within the meaning of *Thomas.* We disagree because Cargal knew interviewers sometimes made referrals to these establishments. Cargal's job classification had not been changed or redefined.

In summary, Cargal was not forced to change job classifications. He asked to be transferred to a job classification that included work he finds religiously objectionable. He was aware the job classification included such work. He believed that he would be exempted from such work even though he admitted he did not know how the Division would have known of his religious objections. He did not tell the Division of his religious objections to part of the duties of his job classification. He, rather than the Division, placed himself in the position of having to refuse to obey orders to fulfill the duties of his job classification; therefore, even though his refusal to obey orders to fulfill the duties of his job classification was based upon his religious convictions, Cargal was dismissed for just cause within the meaning of IC 22–4–15–1. He was not compelled by the State to choose between the exercise of his religious faith and unemployment benefits within the meaning of *Thomas.*

The decision of the Review Board is affirmed.

HOFFMAN, P. J., and GARRARD, J., concur.