Richard D. SLOAN, Claimant-Appellant,

v.

REVIEW BOARD OF THE INDIANA EMPLOYMENT SECURITY DIVISION, William H. Skinner, David L. Adams and Paul M. Hutson, as Members of and as constituting the Review Board of the Indiana Employment Security Division, and City of Fort Wayne—Street Department, Employer, Defendants-Appellees.

No. 2-782A210.

Court of Appeals of Indiana, Third District.

Jan. 25, 1983.

Rehearing Denied March 29, 1983.

Lebrato & Miller, Fort Wayne, for claimant-appellant.

Linley E. Pearson, Atty. Gen., Gorden R. Medlicott, Deputy Atty. Gen., Indianapolis, Bruce O. Boxberger, City Atty., Fort Wayne, for defendants-appellees.

GARRARD, Judge.

This is an appeal from a decision of the Review Board finding Richard Sloan ineligible for unemployment compensation benefits after his discharge from the Fort Wayne Street Department.

The evidence viewed from the perspective favoring the Review Board's decision discloses that Sloan was employed by the street department through the CETA program in 1976 and became a regular city employee with the department in 1978. Although street department employees were represented by a union and a collective bargaining agreement covered their terms of employment, Sloan did not personally belong to the union.

On February 7, 1980, Sloan burst into the office of Street Commissioner Underwood and commenced telling Underwood that he lacked authority to do certain things and that he had violated the collective bargaining agreement. Sloan's attitude was described as sarcastic at this and the subse-

quent meetings. Sloan was apparently protesting a change in work hours that had been initiated by the commissioner. In doing so, however, he ignored the established contractual procedures for the determination of grievances.

The following day Sloan was summoned to Underwood's office for a meeting. During the ensuing conversation Sloan produced and activated a tape recorder, saying he needed it for his own protection. When Sloan began tape recording the conversation he was told that the tape recorder was unnecessary and should be turned off. In addition, at that point Underwood secured the presence of the union steward before any more was said. When the conversation resumed Sloan again turned on the recorder. He was asked, then ordered, to stop recording. When he flatly refused to follow the express direction to turn off the machine, he was suspended from work for three days.

The next meeting between Sloan and Underwood occurred the day of Sloan's return from his three day suspension. Underwood encountered Sloan in the general foreman's office where Sloan was "raising holy hell" and was attempting to record the meeting with the foreman. This meeting was occurring at a time when Sloan should have been working.

Underwood took Sloan and the others to Underwood's office to resolve the dispute. Sloan began tape recording this meeting and Underwood advised him that he should stop. Sloan refused and Underwood asked him again, pointing out that the union steward and others were present. Sloan again refused. Finally, Underwood ordered Sloan to turn off the recorder. When Sloan flatly refused, he was asked if he was deliberately disobeying an order of the street commissioner. When Sloan responded "yeah," he was terminated.

When Sloan applied for unemployment compensation, a claims deputy granted ben-

efits. At the employer's request a hearing was then held before a referee. The referee found that Sloan was not violating any written rule of the employer and further found:

"[T]he claimant was not refusing to carry out a particular task or job within his laborer's classification. In other words, the instructions given to the claimant which was [sic] the basis of the discharge, *did not arise out of the service for which he was engaged* by this employer." (Emphasis added)

Accordingly, the referee concluded Sloan was entitled to benefits.

The Review Board reversed the referee's determination, finding that Sloan was discharged for insubordination in refusing to obey the employer's instructions to cease recording the meeting, that the discharge occurred when for the third time since February 8, 1980 he refused to obey the employer's instructions not to record meetings, and that the refusal breached the duty he reasonably owed his employer.

Sloan's appeal raises essentially three issues:[1] (a) whether the board's findings were adequate to permit review; (b) whether the decision is contrary to law; and (c) whether the statutory review process denied him due process.

IC 22–4–15–1 includes within the definition of "discharge for just cause" that will disqualify a claimant for benefits "knowing violation of a reasonable and uniformly enforced rule of an employer," "refusing to obey instructions," or "any breach of duty in connection with work which is reasonably owed employer by an employee."

■ We agree with Sloan's general assertion that the findings entered by an administrative agency must be such as to inform the parties of the evidentiary bases upon which the ultimate finding rests and to permit this court to engage in meaningful review. *Perez v. United States Steel Corp.* (1981), Ind., 426 N.E.2d 29.

1. He also urges that the Review Board ignored competent evidence and argues that the recording could have been for the benefit of both parties. The argument, in essence, asks us to reweigh the evidence. This we may not do. We also point out that the issue is not the possible desirability of recording meetings. It is whether Sloan was guilty of insubordination.

■ Sloan contends the findings before us are deficient because the Review Board failed to make a finding that the employer's instruction was reasonable. We disagree.

The board expressly found that Sloan was twice ordered on February 8 to cease recording and was given a three day suspension when he refused to comply on the second occasion; that he refused to obey the instruction to cease on February 13; that he was discharged for insubordination for that refusal; that the refusal "breached the duty *reasonably* owed," and constituted just cause for discharge within the meaning of the act.

We acknowledge, as Sloan contends, that reasonableness is an implicit element in the statute's use of "refusal to obey instructions" as an illustration of discharge for good cause. *Graham v. Rev. Bd.* (1979), Ind.App., 386 N.E.2d 699. But as such, it is equally implied in the Review Board's finding that the refusal breached Sloan's reasonable duty to his employer. As in *Graham,* Sloan's argument confuses the procedural issue of whether the findings are adequate to advise, with the substantive issues of whether they are sustained by the evidence or lead as a matter of law to a conclusion contrary to that reached by the board. The findings in the instant case are not deficient.

Sloan next contends that the Review Board's decision does not rest on a rational basis and therefore is contrary to law. He argues that there was no evidence produced as to how recording conversations harmed the employer or that there was a uniformly enforced rule against recording.

■ In a discharge case, the burden of establishing just cause initially rests with the employer. However, when the employer establishes a prima facie case the burden shifts to the employee to introduce competent evidence to rebut the employer's case. *Cargal v. Rev. Bd.* (1981), Ind.App., 428 N.E.2d 85; *Forster v. Rev. Bd.* (1981), Ind. App., 420 N.E.2d 1287. Furthermore, on appeal the burden is upon Sloan to establish that reversible error exists. *Wakshlag v. Rev. Bd.* (1980), Ind.App., 413 N.E.2d 1078.

■ Here the evidence disclosed no written rule against recording conversations but neither did it disclose any other instances where such conduct had occurred. At no point did Sloan request permission to record any of the meetings. On February 8th, when he announced to Commissioner Underwood that he was going to record the meeting, he was instructed not to. When he indicated he wanted the recording for his own protection the meeting was recessed until the union steward could be present as a witness to what transpired. With the steward present Sloan still insisted on recording the meeting, was ordered to turn off the recorder, and was given a three day suspension when he refused. The record is silent concerning any effort by Sloan to file a grievance over the right to use a tape recorder. Instead when he returned to work after the disciplinary layoff, he again violated a direct order by the street commissioner to turn off his recorder during their meeting and acknowledged that he was refusing to do so.

There is no doubt concerning Sloan's refusal to obey instructions. With the question having arisen on the two prior occasions and his unequivocal response to the order on February 13th, the deliberateness or willfulness necessary to discharge for just cause was clearly inferrable. *See Merkle v. Rev. Bd.* (1950), 120 Ind.App. 108, 90 N.E.2d 524.

Furthermore, we think the instances in question are properly considered as "in connection with work" although they did not directly involve Sloan's work assignment activity. Discussions between supervisors and employees concerning job assignments and "wages, hours and working conditions" are an expected and necessary part of the employment relationship and as such may be properly considered as occurring in connection with the work.

The remaining question is whether the instruction was reasonable. The board found that it was and under the total circumstances we cannot say that it was unreasonable. That is not to say that it would

not have been reasonable to allow meetings to be recorded, or that the street commissioner may not have been guilty of some overreaction. The law does not require of an employer that its rules be the *most* reasonable, only that they be supported by reason.

In the daily give and take of an employment relationship it is reasonable to desire an atmosphere of flexibility and informality. For one of the parties to suddenly produce a recording device and announce that all conversation will be recorded is at least disruptive of that atmosphere.

When Sloan indicated he desired self-protection, it was reasonable for the employer to offer the alternative of admitting the union steward to the meeting as a witness to what transpired.

In the face of the two confrontations less than a week before and in the absence of any effort by Sloan to secure permission or authority to record, his actions on February 13th clearly support the inference that he elected to deliberately assert his personal preference and willfully refused to obey the instructions of the street commissioners. The conclusion that he was therefore discharged for good cause is sustained by the record. *Graham v. Rev. Bd., supra.*

██ Finally, Sloan contends that he was denied due process by the statutory procedure which permitted the Review Board to determine the facts from "a paper review" where they neither saw nor heard the witnesses.

We first note that Sloan was entitled to and had an evidentiary hearing before the referee. IC 22–4–17–3. *Compare Goldberg v. Kelly* (1970), 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287. In addition, Sloan was entitled in the appeal to the full board to request permission to introduce additional evidence. 640 IAC 1–11–8. This he did not do.

Although it was not cited by the parties, we are aware of the Fourth District's decision in *Addison v. Rev. Bd.* (1979), Ind.App., 397 N.E.2d 1037. In that case two referees were involved at the referee hearing stage of the proceeding. One referee heard the claimant's evidence on July 30, 1978 and a different referee heard the employer's evidence on September 15, 1978. The first referee subsequently issued findings of fact and conclusions and denied Addison's claim. Finding that a meaningful credibility evaluation was essential to the requirement of a "fair hearing" at that stage of the proceedings the court found a denial of due process and remanded for a new hearing.

We recognize that *Addison* imposes implications on the statutory process for review by the full Review Board of a referee's decision. However, we are not here confronted with a situation where the Review Board was engaged in a critical evaluation of credibility. The evidence adduced at the hearing before the referee is not essentially in dispute. The referee concluded that the disobeyed instructions did not arise out of the service for which he (Sloan) was engaged. The Review Board, correctly, drew a contrary conclusion and reversed the referee's determination. There was no denial of due process in that action.

Affirmed.

HOFFMAN, P.J., concurs.

STATON, J., concurs in result and files separate opinion.

STATON, Judge, concurring in result.

I concur in result for the reason that the Review Board should have made a finding that the instruction was reasonable.