William L. WAMPLER, Appellant,

v.

REVIEW BOARD OF the INDIANA EM-
PLOYMENT SECURITY DIVISION,
John Mowrer, David Adams and Paul
M. Hutson as the members of and con-
stituting the Review Board of the
Indiana Employment Security Division;
and Donaldson Company, Inc., Appel-
lees.

No. 93A02-8602-EX-44.

Court of Appeals of Indiana,
Second District.

Oct. 21, 1986.

Timothy Broden, Legal Services Program
of Northern Indiana, Inc., Lafayette, for
appellant.

Linley E. Pearson, Atty. Gen., Cheryl L.
Greiner, Deputy Atty. Gen., Indianapolis,
for appellee Review Bd. of Indiana Employ-
ment Sec. Div.

SULLIVAN, Judge.

William Wampler appeals a denial of ben-
efits by the Employment Security Review
Board. Wampler's only contention is that
based upon the Board's negative evaluation
of Wampler's credibility, the Board re-
versed the appeals referee who heard the
evidence. This, he contends, renders the
Board's decision contrary to law, citing *Ad-
dison v. Review Board* (1979) 4th Dist.Ind.
App., 397 N.E.2d 1037.[1]

If the matter of Wampler's credibility
was not determinative of the issue before
the Board, we are not given cause for

---

1. In *Addison,* the court held that the taking of
testimony could not be divided between two

hearing referees, only one of whom made the
ultimate factual determination.

reversal. Therefore, before we may reach the merits of Wampler's contention, it must be clear from the record that the Board's reversal was predicated solely upon an assessment of credibility.

■ In this connection it is essential to state what is meant by "credibility" with regard to the process of evaluating evidence. The precise issue of credibility in the context before us is truly one of demeanor credibility. In the broad sense, credibility includes not only the witness's appearance and manner of speaking, but also the ability to testify rationally, consistently, and not in disharmony with other highly credible evidence presented. Of these components of credibility, only demeanor remains outside the reviewing authority's abilities to assess. *Penasquitos Village, Inc. v. NLRB* (1977) 9th Cir., 565 F.2d 1074, 1084 (Duniway, J., concurring and dissenting). *See also*, 3 K. Davis, *Administrative Law Treatise* § 17.16 (2d Ed. 1980) and 1 Koch, *Administrative Law and Practice* § 6.73 (1985).

From October, 1981, to May, 1984, Wampler worked for Donaldson Company in Frankfort. Donaldson manufactures air filtration systems; Wampler worked a variety of positions. The events leading to his termination began with an employee evaluation on March 30, 1984. Wampler's evaluation was the lowest in the plant. Wampler knew the evaluation was low and knew his job was in jeopardy. The evaluation recommended Wampler improve both his performance and attitude toward the company.

During the next month, four separate instances of excessively low production were documented. Although Wampler worked in an area without precisely set production quotas, ranges had been established through past practice. For example, on April 9, Wampler produced 568 pieces in a two and one-half hour period. One thousand one hundred per hour was standard.

Wampler's difficulties continued into May. On May 1, he was told to obtain permission before he changed the scrubber on a floor machine over to a vacuum. Wampler and others began work on the machine without having obtained permission from the maintenance man. On May 7 and 8, Wampler was trained on a new machine and his knowledge and skills were negatively evaluated. On May 9, Wampler reportedly gave unauthorized training to an employee on a mold maker. Finally, Wampler, working on plastic scrap on May 17, cut a piece of scrap spirally. Management believed the plastic was a toy, and that Wampler cut it because he was bored.

Wampler was discharged in late May. The spiral-cut plastic toy was the catalyst for the move, though management stated other grounds, including inconsistent performance, low production and poor attitude. Management strongly believed that Wampler had the ability and skill necessary to perform his job.

For each incident leading to discharge, Wampler offered an explanation. He claimed that low production was due either to experimental molds or odd-sized inventory. He admitted the failure to obtain permission to work on the floor machine, but said it was a "team effort" and his work was "obviously misconstrued." His low training rating was due to his slow learning, Wampler believed. Wampler disclaimed any responsibility for unauthorized training, saying he had no control over the person watching his machine. Wampler stated that he did not make the spiral cut in the plastic scrap to make a toy, but rather was cutting the plastic down so that it would fit into the scrap chopper. He was merely waiting for the machine to complete a prior operation before inserting new plastic.

The initial unemployment compensation determination was denial of benefits because of discharge for just cause.[2] Wam-

---

**2.** In the unemployment compensation context, "just cause" includes, *inter alia,* "refusing to obey instructions," and "breach[ing] of duty in connection with work which is reasonably owed an employer by an employee." I.C. 22–4–15–1(e)(5), (8) (Burns Code Ed.Supp.1985) (Current, unchanged version at I.C. 22–4–15–1(d)(5), (8) (Burns Code Ed.Repl.1986). A discharge for

pler appealed and was granted a hearing at which Wampler and Donaldson's personnel manager, production supervisor and lead operator testified. The appeals referee concluded that Wampler's production was not substandard in the final weeks of his employment, and though he disregarded instructions about the floor machine, Wampler was not chargeable with a pattern of negligent conduct. Thus, the referee ruled, just cause did not exist.

The Review Board reversed. The Board's core findings were: Wampler had the skill and ability to perform his job duties; he failed to do so, even after his evaluation; Wampler offered no "competent evidence of probative value" to show that he worked to the best of his abilities; and, Wampler disregarded instructions concerning the floor machine. The Board confined its review to the record created at the hearing.[3] By reversing the referee without having an additional hearing, Wampler claims the Board substituted its judgment of credibility for that of the referee who heard the testimony. He urges that this makes the decision of the Review Board contrary to law.

█ When a decision of the Review Board is challenged as being contrary to law, our review is limited. Indiana Code 22–4–17–12 (Burns Code Ed.Supp.1985) provides:

"(a) Any decision of the review board shall be conclusive and binding as to all questions of fact....

\*      \*      \*      \*      \*      \*

(e) ... An assignment of errors that the decision of the review board is contrary to law shall be sufficient to present both the sufficiency of the facts found to sustain the decision and the sufficiency of the evidence to sustain the findings of fact...."[4]

The statute causes a two-part inquiry. The first part is an examination of the relationship between the premises (or facts as found) and the conclusions of the Board. We determine if the Review Board's deductions were "reasonable," which is a question of law. *Gold Bond Building Products Div. v. Review Board* (1976) 2d Dist., 169 Ind.App. 478, 349 N.E.2d 258, *citing, City of Evansville v. Southern Ind. Gas and Electric Co.* (1975) 2d Dist., 167 Ind. App. 472, 339 N.E.2d 562. The second part is an inquiry into, "the nexus between the premises or findings of basic facts and the evidence presented to determine if the evidence justified those findings." *Gold Bond, supra,* 349 N.E.2d at 263. In this analysis, we do not reweigh the evidence and only that evidence favorable to the Board's determination, and reasonable inferences to be drawn from it, will be considered. *Miller v. Review Board* (1982) 1st Dist.Ind.App., 436 N.E.2d 804, 806; *Forster v. Review Board* (1981) 4th Dist.Ind. App., 420 N.E.2d 1287, 1291.

█ Considering the components in reverse order, clearly the evidence supporting the Board's findings of fact is sufficient. Wampler does not controvert the evidence which, in the Board's judgment, gave rise to a prima facie case of just cause. Wampler has not contested the evidence of his output. Neither has he denied failing to obtain permission before working on the floor machine. In fact, he admitted it. Wampler also does not contest Donaldson management's assessment of his skills, aptitude, and abilities, which was favorable to Wampler. The Board had before it competent evidence from those employees having the obligation to monitor Wampler, and had uncontested evidence of low productivity, violated instructions, and ability. The evidence was sufficient to support the Board's findings. *See, e.g., Osborn v. Re-*

---

just cause disqualifies the individual for unemployment benefits, I.C. 22–4–15–1(a), in keeping with the policy to compensate individuals who are discharged through no fault of their own. I.C. 22–4–1–1 (Burns Code Ed.Supp.1985), *amended by* P.L. 144–1986.

**3.** 640 I.A.C. 1–11–8 (1984) (Conduct of Hearing before Review Board).

**4.** I.C. 22–4–17–12 was amended by P.L. 20–1986. The quoted language is now found in subsections (a) and (f) in identical form.

*view Board* (1978) 4th Dist., 178 Ind.App. 22, 381 N.E.2d 495.

The relationship between premises and conclusions is a more difficult question. Wampler contends that it was unreasonable for the Board to conclude that, in the face of Wampler's explanations for each incident, his work was so deficient as to rise to the level of just cause for unemployment compensation purposes. Wampler contends that the Board reached the conclusion of just cause by deciding that his testimony was not credible, though it did not see or hear him testify.

■ Procedurally, the burden of establishing just cause for discharge rests with the employer in proceedings before the Employment Security Division. Once this burden is met with the establishment of a prima facie case, it is incumbent upon the claimant to produce evidence which rebuts the employer's case. *Sloan v. Review Board* (1983) 3d Dist., Ind.App., 444 N.E.2d 862, 865. On appeal from a denial of benefits, the claimant bears the burden of showing error. *Id.*

Our cases interpreting "just cause" have formulated a consistent definition:

" 'Fault,' or 'just cause,' as used in the Employment Security Act, means failure or volition, and does not mean something blameworthy, culpable, or worthy of censure....

Whether unemployed persons are without fault must be determined upon the facts and circumstances of the individual case. Determination of cause is a question of fact. It is conduct evidencing such wilful or wanton disregard of the employer's interest as is found in deliberate violations or disregard of standards of behavior which the employer has a right to expect of his employee, or *a carelessness or negligence of such a degree or recurrence* as to manifest equal

culpability, wrongful intent, or evil design, or to show an intentional or substantial disregard of the employer's interest, or of the employee's duties or obligation to his employer." *Wakshlag v. Review Board* (1980) 4th Dist.Ind. App., 413 N.E.2d 1078, 1083 (Citations omitted; emphasis in original).[5]

With this procedural and definitional context in mind, the Board's resolution in Wampler's case becomes more clear. The Board concluded that Wampler's conduct evidences a "carelessness or negligence of such a degree or recurrence," that his discharge was justified. Wampler received an evaluation in late March, and was told his performance had been less than merely lackluster. Yet, in the two months following that, Wampler was involved in no less than eleven separate instances of lax work habits or poor performance. Throughout this period, there is no indication that Wampler was unable to perform the work assigned, or that his skills and abilities left him unable to reach management expectations. In short, the record reflects a chronically poor employee.

■ For the Board to have rejected Wampler's explanations of his poor performance, the Board need only have looked to the record. There was no need for the Board to substitute its intuitive sense of Wampler's demeanor for the judgment of the appeals referee. The Board's decision rests upon a judgment that the explanations were insufficient as a matter of law in the face of overwhelming evidence of continuing disregard for the legitimate interests of the employer.

We therefore do not reach the precise question presented by Wampler. We do feel compelled to note, however, as we have done five times within the past seven years,[6] that a final agency decision reversing a hearing officer's decision on the basis of demeanor credibility presents serious

---

**5.** The language in *Wakshlag* comes from a Wisconsin case, *Boynton Cab Co. v. Neubeck* (1941) 237 Wis. 249, 296 N.W. 636, at a time when both the Indiana and Wisconsin unemployment compensation statutes spoke in terms of "misconduct." Ind.Ann.Stat. § 52–1539 (Burns 1949);

*Arthur Winer, Inc. v. Review Board* (1950) 120 Ind.App. 638, 95 N.E.2d 214.

**6.** The question has been noted in *St. Mary's Medical Center v. Review Board* (1986) 3d Dist. Ind.App., 493 N.E.2d 1275; *Public Service Co. v. Review Board* (1983) 2d Dist.Ind.App., 451

questions of due process and the agency's review procedures. In *Addison v. Review Board, supra,* 397 N.E.2d at 1039, Judge Chipman articulated the concern:

> "[T]he court [in *City of Mishawaka v. Stewart,* (1974) 261 Ind. 670, 310 N.E.2d 65] recognized that considerations of administrative efficiency and convenience cannot devour what must remain a fair and meaningful agency determination in accordance with due process."

We reiterate that the Board should be sensitive to the due process rights of the parties when resolution of an issue turns exclusively upon witness credibility and should carefully consider the grant of an evidentiary hearing.

Nevertheless, and in mind of the caveat set forth above, our holding today is that because the Board's decision did not rest solely upon the demeanor of Wampler when he testified before the referee, it has not been shown to be contrary to law. *St. Mary's Medical Center v. Review Board* (1986) 3d Dist.Ind.App., 493 N.E.2d 1275.

The decision of the Review Board is affirmed.

BUCHANAN, C.J., and SHIELDS, J., concur.

N.E.2d 371, 375, n. 2; *Sloan, supra,* 444 N.E.2d 862; *Tauteris v. Review Board* (1980) 3d Dist. Ind.App., 409 N.E.2d 1192, 1192; and *Addison, supra,* 397 N.E.2d 1037.