**LaDon A. MOORE, Appellant–Petitioner,**

**v.**

**REVIEW BOARD OF the INDIANA DEPARTMENT OF WORKFORCE DEVELOPMENT and Whitington Homes and Services, Appellees–Respondents.**

No. 93A02–1005–EX–529.

Court of Appeals of Indiana.

Aug. 12, 2011.

LaDon A. Moore, Indianapolis, IN, Appellant Pro–Se.

Gregory F. Zoeller, Attorney General of Indiana, Elizabeth Rogers, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BAKER, Judge.

In this case, one of the issues with which we are presented is whether this Court may publish the names of the parties in a case involving the Review Board of the Indiana Department of Workforce Development (the Review Board). Although Indiana Code section 22–4–19–6 imposes certain confidentiality obligations on the Department of Workforce Development (the Department), the statute as incorporated into Administrative Rule 9(G) does not impose the same obligations on this Court, in as much as Rule 9(G) states that although courts on appeal "should endeav-

or to exclude the names of parties and affected persons, and any other matters excluded from public access," they may disclose names "as essential to the resolution of litigation or appropriate to further the establishment of precedent or the development of the law." In light of the high volume of cases in which the Review Board is a party, publishing names is essential to eliminate confusion and to increase efficiency.

LaDon Moore appeals the decision of the Review Board finding Moore was discharged by her employer for just cause. The gravamen of her argument is that there is insufficient evidence to support the Board's determination. Additionally, the Review Board has filed a Motion to Publish the Names of the Parties. Granting the Review Board's Motion to Publish and concluding there is sufficient evidence to support the Review Board's decision, we affirm.

## FACTS

Moore began her employment with Whitington Homes and Services for Families and Children (Whitington) in May 2004. In May 2008, the Human Resources Manager verbally warned Moore that Whitington's clients as well as Moore's co-workers perceived Moore as being rude and disrespectful, and that this method of communication was negatively impacting Whitington. The Manager explained that as part of Moore's job as Program Manager, Moore dealt extensively with county case managers, co-workers, subordinates, mentors, interns, and foster parents. The Manager further told Moore that her communication style had to be open, polite, and accommodating. Moore responded that she would improve her communication style and be more aware of how she was perceived.

On March 12, 2009, Moore received a first written warning that her behavior was rude, disrespectful, and unprofessional. Specifically, a "Disciplinary Action" report reveals that Moore's co-workers, an intern, a mentor, and foster parents all complained about Moore. For example, one of Moore's co-workers complained that when she asked Moore a question, Moore told her that it didn't take a rocket scientist to figure it out. Appellant's App. pp. 3–6. Another co-worker complained that Moore called her "stupid" in front of one of the clients. *Id.* The intern complained that when she asked Moore questions, Moore snapped at her and made her feel like she was bothering Moore. When the intern called in sick one day, Moore was rude and short with her on the phone. Mentors complained about Moore's shortness in tone, and two foster parents complained that Moore was difficult to reach, and when they did reach her, Moore was "smart mouthed" and "short and condescending." *Id.* The Manager explained that because of the numerous complaints, Moore deserved a written warning to let her know the seriousness of the problem. According to the Manager, Moore's violation occurred under the Major Infraction for rudeness, disrespect, and unprofessional behavior as listed in the employee handbook. Lastly, the Manager explained that the goal of the discipline was not to punish Moore, but to change her unacceptable behavior. *Id.*

On September 14, 2009, Moore received her second written warning for being rude, disrespectful, and unprofessional. The "Disciplinary Action" report reveals that following the prior written warning, Whitington sent Moore to the following training sessions to help her improve her communication skills: 1) Excelling as a First–Time Manager or Supervisor; 2) Ethics and Professional Conduct; and 3) Providing Outstanding Customer Services. *Id.* at 7–

9. That report further reveals that on September 3, 2009, there was an incident involving Moore and a pregnant employee where Moore questioned the employee about her qualification for intermittent leave and her delivery date. The Employee called a Human Resources representative, who contacted Moore. An argument ensued between Moore and the Human Resources representative. The second written warning explained that Moore had not improved her communication skills and was still acting in a rude, disrespectful, and unprofessional manner. The warning further provided that this was Moore's last warning and that any other disciplinary instances would result in immediate termination.

Four days later, Moore received a third written warning, which resulted in her dismissal from Whitington. The "Disciplinary Action" report reveals that representatives from the mentor program had warned Whitington that they were going to drop the program because of the lack of communication and cooperation they had received. *Id.* at 10–12. At least one-half of the mentors complained that Moore was uncooperative and did not return phone calls. The written warning further explained that the mentoring program was a lifeline for the clients living at Whitington and Moore's behavior had put it in jeopardy. The warning concluded that Moore's behavior continued to be rude, disrespectful, and unprofessional despite the communication trainings she had been offered, and that she was being dismissed for these reasons.

A Workforce Development Administrative Law Judge (ALJ) concluded that Moore was discharged for cause. The Review Board agreed and affirmed the decision of the ALJ. Moore appeals the Review Board's decision.

## DISCUSSION AND DECISION

### I. Use of Names

■ As a preliminary matter we note that the Review Board has filed a "Motion to Publish the Names of the Parties," which asks this Court to publish the names of the parties, both individuals and employing units, in this, and in all future cases involving the Review Board. Specifically, the Review Board contends that it is difficult to administer the high volume of cases in the appellate process where the names of the individuals and employing units are not disclosed. This is because cases are no longer identifiable by the name of the employing unit, and the issue of initials for individuals has caused confusion. The Review Board further explains that the only sure way to identify a case on the Clerk's Online Docket is by cause number, an inefficient and time-consuming process. The Review Board contends that although Indiana Code section 22–4–19–6 protects unemployment records from public access and from use while that information resides with the Department, the names of individuals and employing units need not be kept confidential in actions involving the court system in an otherwise public proceeding. We agree.

Indiana Code section 22–4–19–6 is directed to the Department of Workforce Development. The statute initially states that employers are to "keep true and accurate records containing information the [D]epartment considers necessary" and that the records are open to inspection by an authorized representative of the Department. Ind.Code § 22–4–19–6(a). It then imposes the following obligation on the Department:

(b) ... [I]nformation obtained or obtained from any person in the administration of this article and the records of the department relating to the unem-

ployment tax or the payment of benefits is confidential and may not be published or be open to public inspection in any manner revealing the individual's or the employing unit's identity, except in obedience to an order of a court or as provided in this section.

This is essentially the same obligation that has been imposed on the Department since 1947.[1]

Pursuant to this statute, unemployment records within the Department have always remained confidential. However, once a case was appealed to this Court, and despite the obligations of section 22–4–19–6, which have existed for over sixty years, the Attorney General (who represents the Review Board), employers, employees, other attorneys before this Court, and both the Indiana Supreme Court and this Court routinely disclosed the full names of the parties in pleadings and in opinions on appeal.

On January 1, 2010, Administrative Rule 9(G), which concerns information in court records that is excluded from public access, was amended to incorporate by reference Indiana Code section 22–4–19–6. This amendment has led some to believe that we are now required to keep the names of the parties confidential on appeal. Others disagree. Since January 1, 2010, there have been sixteen reported cases from this Court in which the Review Board is named a party. Four of those cases have used the full names of the parties. *See Koewler v. Review Bd. of Ind. Dep't of Workforce Dev.,* 951 N.E.2d

272 (Ind.Ct.App.2011); *Lush v. Review Bd. of Ind. Dep't of Workforce Dev.,* 944 N.E.2d 492 (Ind.Ct.App.2011); *Wolf Lake Pub. Inc. v. Review Bd. of Ind. Dep't of Workforce Dev.,* 930 N.E.2d 1138 (Ind.Ct. App.2010); *Value World Inc. of Ind. v. Review Bd. of Ind. Dep't of Workforce Dev.,* 927 N.E.2d 945 (Ind.Ct.App.2010).

Section 22–4–19–6(b) includes an exception for "an order of a court," and Administrative Rule 9(G)(4)(d) provides that although courts on appeal "should endeavor to exclude the names of parties and affected persons, and any other matters excluded from public access," they may disclose names "as essential to the resolution of litigation or appropriate to further the establishment of precedent or the development of the law." Although there are some who believe that disclosing the names of the parties in this case does not meet either provision, we note that using initials or other generic identifiers in every case makes one virtually indistinguishable from another. For example, the designation the Clerk's Office gave this case is "L.M. v. Review Board." A search of our docket by litigant name yields over 100 cases designated "Review Board." If we use L.M., the somewhat more descriptive initials of the claimant in this case, a search of the docket yields thirty-four cases already given that designation.

In sum, Administrative Rule 9(G) merely incorporated Section 22–4–19–6 as it had been interpreted for decades. With that in mind, reading the authority granted by Administrative Rule 9(G)(4)(d) together

---

1. The 1947 statute read in part as follows:

The Board, the Review Board, or a referee may require from any employing unit any verified or unverified report, with respect to persons employed by it, which may be deemed to be necessary for the effective administration of this Act. Information thus obtained or obtained from any person pursuant to the administration of this Act and

the records of the Division shall be confidential and shall not be published nor be open to public inspection, in any manner, reveal the individual's or the employing unit's identity, except in obedience to an order of court of jurisdiction in any judicial proceeding relating to any violation or disregard of provisions of this Act.

with section 22–4–19–6(b)'s exception for court orders and considering the Review Board's interpretation of its own obligations under the statute as well as the interpretation of the statute by the Indiana Supreme Court and this Court in countless cases for over sixty years, we believe it is appropriate for this Court to use the full names of parties in routine appeals from the Review Board.

## II. Sufficiency of the Evidence

We now turn to Moore's sufficiency issue. At the outset we note that Moore is representing herself. Pro se litigants are held to the same standard as are attorneys duly admitted to the practice of law. *Smith v. State,* 822 N.E.2d 193, 203 (Ind.Ct.App.2005). Moore has failed in many respects to comply with our appellate rules in pursuing her appeal. Indiana Appellate Rule 46 governs the arrangement and content of briefs. Moore's appellate brief fails to include a Table of Authorities as required by this rule. *See* Ind. Appellate Rule 46(A)(2). Appellate Rule 46(A)(8)(a) and (b) require the argument section of the brief to contain the "contentions of the appellant on the issues presented, supported by cogent reasoning [and] supported by citations to the authorities, statutes, and the Appendix or parts of the Record on Appeal relied on ..." as well as a concise statement of the applicable standard or review. Moore's appellate brief contains neither of these requirements. It would be within our province to waive Moore's argument and summarily affirm the Review Board based upon Moore's failure to follow the appellate rules. *See Ramsey v. Review Bd. of Ind. Dep't of Workforce Dev.,* 789 N.E.2d 486, 490 (Ind.Ct.App.2003). However, because we prefer to dispose of cases on their merits, *see Art Hill, Inc. v. Review Bd. of Ind. Dep't of Workforce Dev.,* 898 N.E.2d 363, 366 (Ind.Ct.App.2008), and because

there is sufficient information in Moore's brief and in the Review Board's brief for us to discern her issue and the substance of her argument, we will consider the merits of her appeal.

In Review Board cases, we are limited to a two-part inquiry into the sufficiency of the facts found to sustain the findings of fact. *Spieker v. Review Bd. of Ind. Dep't of Workforce Dev.,* 925 N.E.2d 376, 378 (Ind.Ct.App.2010). We will reverse the decision only if there is no substantial evidence to support its findings. *Id.* In conducting our analysis, we neither reweigh the evidence nor assess witness credibility. *Id.*

An unemployment claimant is ineligible for unemployment benefits if she is discharged for just cause. *Id.* Just cause includes discharge for a knowing violation of an employer's reasonable and uniformly enforced rule. *See* Indiana Code § 22–4–15–1(d)(2). The employer bears the burden of establishing a prima facie showing of just cause for termination. *Spieker,* 925 N.E.2d at 378. Once that burden is met, the burden shifts to the employee to introduce competent evidence to rebut the employer's case. *Id.*

Here, Whitington presented evidence that Moore was discharged for being rude and for exhibiting disrespectful and unprofessional behavior to Whitington's clients and staff in violation of a rule that prohibited such behavior. Whitington also presented evidence that the rule was reasonable and uniformly enforced. The burden then shifted to Moore to introduce evidence to rebut Whitington's case. However, the only evidence that Moore introduced was her testimony that she disagreed with reports that she was rude and disrespectful.

Given the evidence establishing that Whitington's rule was reasonable and uniformly enforced, as well as Moore's lack of evidence to rebut Whitington's case, we find that the Review Board did not err in affirming the ALJ's determination.

The judgment of the Review Board is affirmed.

KIRSCH, J., and BROWN, J., concur.