**KBI, INC., Appellant–Employer,**

**v.**

**REVIEW BOARD OF THE INDIANA DEPARTMENT OF WORKFORCE DEVELOPMENT and Kyle B. Cox, Appellees–Claimants.**

No. 93A02–9501–EX–41.

Court of Appeals of Indiana.

Oct. 24, 1995.

Janet Barbre Norton, Barnes & Thornburg, Indianapolis, Thomas A. Brennan, Dan-

iel E. Burke, Graydon, Head & Ritchey, Cincinnati, OH, for appellant.

Pamela Carter, Attorney General, Sabra A. Weliever, Deputy Attorney General, Indianapolis, for appellee, Review Board.

## OPINION

FRIEDLANDER, Judge.

KBI, Inc. appeals the decision of the Review Board of the Indiana Department of Workforce Development (Review Board) which determined that Kyle Cox, a former KBI employee, had not been discharged for "just cause" and was eligible for unemployment benefits following termination from the company.

We affirm.

The facts most favorable to the judgment are that Cox was employed by KBI as a "break and lunch" person for approximately two years. KBI bakes and sells soft bread, and Cox typically worked from 12:00 a.m. to 8:30 a.m.. KBI permitted its employees to take damaged buns at no charge, and they were entitled to purchase non-damaged goods through a KBI supervisor or office manager.

During Cox's shift on July 31, 1994, KBI had a run of damaged rolls which were going to be discarded. Cox picked up a rack of the damaged rolls and loaded them into his truck at the end of his shift. The office manager observed Cox take the rolls, and it was determined that he had not paid for them. Cox did not seek permission from the company before taking the rolls. Cox was aware of KBI's policy regarding employee purchases of bread, and he had bought some rolls on prior occasions. While KBI required its employees to complete a purchase form before buying any rolls, it did not have a similar policy regarding damaged goods. On past occasions, Cox had always requested permission from his supervisor before taking any damaged product.

Following this incident, KBI suspended Cox pending further investigation. The following day, KBI discharged Cox for violating the following company rule:

"Violations of the following rules shall result in disciplinary action which could include written reprimand, days off without pay or discharge.

. . . . .

A. Rules of Conduct

. . . . .

4. Any theft of money or property is forbidden."

*Record* at 22, 56.

Cox filed for unemployment benefits on August 2, 1994, and an initial determination was made that Cox was not discharged for just cause and was entitled to benefits. On October 18, a hearing was conducted before an Administrative Law Judge (ALJ). Cox's entitlement to benefits was affirmed, and the ALJ issued a decision which provided in relevant part as follows:

*"FINDINGS OF FACT:* It is the finding of this Administrative Law Judge (ALJ) that the facts in the matter are as follows:

—that the claimant was employed by the employer, a bakery of soft rolls, for approximately two years as a break and lunch person.

—that the employer discharged the claimant because the claimant allegedly committed theft.

—that the employer presented a copy of work rules which were posted in the employees break room as well as reviewed with employees at orientation when they were hired.

—that the claimant admitted that he was aware of the rules.

—that the specific rule is noted. below:

Violations of the following rules shall result in disciplinary action which could include written reprimand, days off without pay, or discharge.

A. RULES OF CONDUCT

4. Any theft of money or property is forbidden.

—that, on July 31, 1994, the claimant, had just completed his 12:00 p.m. to 8:00 a.m. shift.

—that the shift had many damaged goods.

—that the claimant found a tray of buns headed for the trash which were 'damaged goods'.

—that the claimant took the tray and placed it in his blue truck.

—that such was observed by the employer representative, present at the hearing, Ms. Trena Carlton, Office Manager.

—that the total value was $5.00: $2.50 for the tray and $2.50 for the approximate value of the damaged goods.

—that the employer does have a policy that requires that employees may purchase products from the employer, but that the transaction must be recorded on a three-part memorandum.

—that, previously, on July 8, 1994, the claimant had purchased some of the employer's products, which was recorded on a three-part memorandum.

—that these were *not* damaged goods.

—that the claimant took the tray because on past occasions when other supervisors were requested if damaged goods could be taken, the claimant, along with other employees were told that such could occur and that it was unnecessary to ask for authorization.

—that no other statement or documentation was presented by the employer indicating that such could not occur.

—that no policy regarding purchases was introduced into the record.

—that Ms. Carlton reported her observations to the Production Manager, Mr. Robert Greenwalt.

—that Mr. Greenwalt immediately informed the Plant Manager, Mr. Edward Piasecki.

—that the claimant was informed by Mr. Greenwalt, over the telephone, that he was suspended until further investigation of this matter.

—that, in this conversation, the claimant indicated that he 'had the buns' but did not steal them.

—that the claimant offered to return the tray of buns and pay for them.

—that Mr. Greenwalt denied the request.

—that, on the following day, a letter was sent to the claimant indicating that he was terminated.

—that the purpose of the policy was to insure honesty between the employer and the employee.

—that the policy was uniformly enforced.

—that no conviction of a felony or Class A Misdemeanor has resulted from this matter.

—that the claimant's only statement to Mr. Greenwalt was that he 'had the buns.'

*CONCLUSIONS OF LAW:* Chapter 15–6.1 of the Act provides the following:

Sec. 6.1 Notwithstanding any other provisions of this article, all of the individual's wage credits established prior to the day upon which the individual was discharged for gross misconduct in connection with work are cancelled. 'Gross misconduct' includes a felony or a Class A misdemeanor committed in connection with work but only if the felony or misdemeanor is admitted by the individual or has resulted in a conviction. . . .

The term 'admitted' as used in Chapter 15–6.1 contemplates an unequivocal written or verbal acknowledgment by the employee that he or she perpetrated the act or acts alleged to constitute gross misconduct. *Skirvin v. Review Board,* (1976) 171 Ind. App. 139, 143, 355 N.E.2d 425, 427. Each element of a felony or misdemeanor must be (*proven*) and *admitted* beyond a reasonable doubt. (Original emphasis). *Sharrett v. Review Board,* (1983) Ind.App., 445 N.E.2d 112.

The Indiana Employment and Training Services Act sets forth eight (8) examples of 'discharge for just cause', one of which is the 'knowing violation of a reasonable and uniformly-enforced rule of an employer.' Ind.Code 22–4–15–1(d)(2). This sub-section requires proof that the employee (a) knowingly violated a (b) reasonable rule of the employer which was (c) uniformly-enforced. *Franks [Frank ] v. Review Board of the Indiana Employment Security Division* (1981), Ind.App., 419 N.E.2d 1318, 1319. To have 'knowingly' violated an employer's rule, the employee (1) must know of the rule and (2) know his conduct violat-

ed the rule. *Barnett v. Review Board of Indiana Employment Security Division* (1981), Ind.App., 419 N.E.2d 249, 251.

'Thus, although the Board did make a finding that Barnett knew of the rule, we hold the board must also make a finding as to whether Barnett 'knew of this conduct which violated the rule[']. This result is mandated by the wording of the statute which requires a 'knowing violation' of a rule rather than merely a violation of a known rule, and by the holdings in several Indiana cases which state that misconduct which will justify discharge of an employee so as to make the employee ineligible for unemployment compensation is 'wanton or willful disregard of the employer's interests, a deliberate violation of the employer's rule, or wrongful intent.' (Emphasis added). [sic] *Merkle v. Review Board* (1950), 120 Ind.App. 108, 112, 90 N.E.2d 524. *White v. Review Board* (1972), 151 Ind.App. 426, 280 N.E.2d 64. *Richard P. Barnett v. Review Board* (1981), Ind.App., 419 N.E.2d 249, 251.

Here, noting the above cited sections of the Act, the above cited cases, and the above cited findings, it is the conclusion of the ALJ as follows:

—that the claimant was not discharged for gross misconduct committed in connection with the work.

—that the claimant did not effect an unequivocal admission that he removed the buns without authorization.

—that no conviction of a felony or Class A Misdemeanor occurred which would be in connection with the work.

—that the claimant was subject to the employer's policy prohibiting theft.

—that the claimant was aware of the policy.

—that the policy was reasonable.

—that the policy was uniformly enforced.

—that the ALJ concludes that the claimant's actions do not reflect a *knowing, willful, wanton* disregard of the employer's interests.

—that the claimant took the buns, which were about to be disposed of by the employer.

—that supervisors indicated that there was no need to request authorization when the buns were headed for the trash can.

—that the claimant was discharged but not for just cause as the employer has not demonstrated that the claimant committed a knowing violation of the policy.

—that the claimant was discharged but not for just cause.

—that the claimant will remain qualified for benefits.

*DECISION:* The initial determination of the deputy is hereby affirmed. The claimant was not discharged for gross misconduct in connection with the work. The claimant was not discharged for just cause and remains qualified to receive benefits under the Act. If otherwise eligible, appropriate benefits are herein granted."

*Record* at 65–69 (emphasis in original).

Following this determination, KBI appealed to the Review Board which adopted the above findings of fact and conclusions of law. KBI appeals and presents the following issue:

Was the Review Board's decision erroneous when it determined that Cox was eligible for unemployment benefits?

This court heard oral argument at Huntington College, Huntington, Indiana, on September 27, 1995.

■ On appeal from the Review Board, this court does not reweigh the evidence. The findings of the Board are deemed conclusive and we consider only the evidence and inferences that support the Board's decision. We will reverse the decision only if there is no substantial evidence to support the findings or if a reasonable person, considering only the evidence supporting those findings, would be bound to reach a different result. *Watterson v. Review Bd.* (1991), Ind. App., 568 N.E.2d 1102; *Gathering v. Review Bd.* (1986), Ind.App., 495 N.E.2d 207.

■ When a Review Board decision is challenged as contrary to law, this court's authority is limited to a two-part inquiry. We first analyze the relationship between the facts as found and the Board's conclusion to determine whether the Board's deductions

were reasonable based on the facts. *Wampler v. Review Bd.* (1986), Ind.App., 498 N.E.2d 998. We then scrutinize the nexus between the evidence presented and the facts as found to determine whether the evidence justifies those findings. *See Wakshlag v. Review Bd.* (1980), Ind.App., 413 N.E.2d 1078.

**▮** Unemployment compensation may be denied to employees who are discharged for just cause. Ind.Code 22–4–15–1(d). Discharge for just cause includes a knowing violation of a reasonable and uniformly enforced rule of an employer. *Id.* It is the employer's burden to prove it had a uniformly enforced work rule and that the claimant knowingly violated the rule. *Hehr v. Review Bd.* (1989), Ind.App., 534 N.E.2d 1122; *Citizens Gas and Coke Utility v. Review Bd.* (1984), Ind.App., 471 N.E.2d 1175, *trans. denied.* KBI contends Cox was discharged for just cause and alleges that several of the findings made by the Board were not supported by the evidence submitted at the hearing. KBI first attacks the following finding:

> "That the claimant took the tray because on past occasions when other supervisors were requested if damaged goods could be taken, the claimant, along with other employees were told that such could occur and that it was unnecessary to ask for authorization."

*Record* at 66. KBI claims that this finding was erroneous in light of Cox's testimony at the hearing:

> "Q: They specifically said that they did not want to be asked anymore if damaged buns could be removed?
>
> A: They didn't say it in that (inaudible), but they just said, you know, go ahead, don't bother.... They're usually pretty busy at the end of a night getting our runs, you know, the run counts done, all their final paperwork so they can change over shifts and at given [sic] time we only had three supervisors and they were busy *and it was an assumption on my part,* I guess. They were on their way to be put into a dumpster to be thrown into the trash and *I*

> felt there was no harm because nobody was going to use them.

*Record* at 44–45 (emphasis supplied).

We reject KBI's argument that Cox's testimony illustrates that Cox knew he should have received KBI's permission before taking the rolls. Testimony was presented from KBI's managers that employees were permitted to take damaged rolls without charge. While Cox did not specifically state that the supervisors did not want to be asked whether damaged products could be removed, he testified that they would respond, "go ahead, don't bother...." *Record* at 44. KBI is merely requesting that we reweigh the evidence which we will not do. *See Watterson, supra.* The evidence presented at the hearing supports the Board's findings that (1) employees could take damaged goods and (2) it was not necessary to seek authorization prior to taking the product.

The next finding that KBI alleges was erroneous and not supported by the evidence is as follows:

> "That no other statement or documentation was presented by the employer indicating that such could not occur."

*Record* at 66.

KBI vice president William McCracken testified as follows:

> "Judge: He's asking did it ever get to a point within the employer's policy that you just don't ask anymore about damaged buns.
>
> A: No, that's not true at all.
>
> . . .
>
> A: But I'm the only one who should authorize anything like that.
>
> Q: Of damaged buns. Were you asked sir?
>
> A: No.
>
> Q: Would an employee have to come and ask you about damaged buns?
>
> A: Yes."

*Record* at 35–36.

KBI argues that this finding is erroneous because the above testimony indicates that evidence *was* presented demonstrating that its employees could not remove damaged

buns without first asking for permission to do so. While *testimony* was presented regarding KBI's policy as to damaged goods, the record is devoid of any further "statement or documentation" regarding the company's policy. This finding was supported by the evidence, and it is apparent that KBI failed to introduce any written company policy into evidence regarding the taking of damaged goods.

In *Watterson v. Review Bd.,* the claimant's employment with the company was terminated for allegedly violating the employer's rule regarding tardiness and excessive absences. No written rule was introduced into evidence, and the substance of the policy was explained by the employer's oral testimony. In reversing the Board's decision which denied benefits, this court determined that "absent stipulation of the parties, the employer must present the rule it relies on to justify its discharge of an employee for just cause in writing." *Id.* At 1106; *see also Blackwell v. Review Bd.* (1990), Ind.App., 560 N.E.2d 674.

 As in *Watterson,* the provisions of an employer's rule were hotly contested. An employer's asserted work rule must be reduced to writing and introduced into evidence to enable this court to fairly and reasonably review the determination that an employee was justly discharged for a knowing violation of the rule. Because KBI did not introduce a written policy into evidence regarding its damaged product, it failed to satisfy its burden that Cox was discharged for just cause for allegedly violating a uniformly enforced work rule. *See Watterson, supra;* IC 22–4–15–1(d).

 KBI next maintains that Cox was ineligible for benefits because he admitted stealing the buns, thereby committing gross misconduct.

Ind.Code 22–4–15–6.1 addresses the issue of discharge for gross misconduct as follows:

"Notwithstanding any other provisions of this Article, all of the individual's wage credits established prior to the day upon which the individual was discharged for gross misconduct in connection with work are cancelled. *'Gross misconduct'* includes a felony or a Class A misdemeanor committed in connection with work but only if the felony or misdemeanor is admitted by the individual or has resulted in a conviction." (Emphasis supplied).

KBI contends that Cox admitted committing theft and argues that the following findings were erroneous:

"[T]hat, in this conversation, the claimant indicated that he 'had the buns' but did not steal them."

"that the claimant's only statement to Mr. Greenwalt was that 'he had the buns."

*Record* at 67.

In support of its argument, KBI points to Cox's testimony:

"Q: Did you admit to theft before him? Had you told him that you had the buns?

A: Yes."

*Record* at 46.

In *Skirvin v. Review Bd.* (1976), 171 Ind. App., 139, 355 N.E.2d 425, this court determined that the term "admitted" "contemplates an unequivocal written or verbal acknowledgement by the employee that he perpetrated the act or acts alleged to constitute 'gross misconduct.'" *Id.* at 143, 355 N.E.2d at 427.

We reject KBI's argument that Cox's answer above constituted an admission of theft. It is apparent from the record that the response was ambiguous as to which question was answered, and we cannot say that Cox's response constituted an unequivocal acknowledgment that he committed theft. Cox never admitted committing the theft when questioned by the ALJ and gave the following explanation:

"Q: The employer contends that at the hearing that theft was committed, what's your response to the allegation?

A: That if I was going to steal buns I would have done it when they couldn't see me. I work from 12:00 midnight to 8:30 in the morning to where there is only one supervisor there and none of these people are there and nobody could have, if I wanted to steal buns I wouldn't have done it in broad daylight, walked out in front of the

production officer in the main office so everybody could see me."

*Record* at 45.

Cox did not make an admission of theft, and the finding that Cox only admitted "ha[ving] the buns," *Record* at 67, was supported by the evidence.

In light of the foregoing, the evidence presented at the hearing was sufficient to support the Review Board's findings and conclusion that Cox was not discharged for "just cause" within the meaning of IC 22–4–15–1. The decision to award Cox unemployment benefits is not contrary to law.

Judgment affirmed.

KIRSCH and SHARPNACK, JJ., concur.