S.S. LLC, Appellant,

v.

REVIEW BOARD OF the INDIANA DEPARTMENT OF WORKFORCE DEVELOPMENT and D.H., Appellees.

No. 93A02–1101–EX–56.

Court of Appeals of Indiana.

Aug. 25, 2011.

Carol M. Wyatt, Baker & Daniels LLP, Indianapolis, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Stephanie Rothenberg, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellees.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

S.S. LLC ("S.S.")[1] appeals the decision of the Review Board of the Indiana Department of Workforce Development ("Review Board") in favor of D.H. on her claim for unemployment benefits. S.S. raises a single issue for our review, namely, whether the Review Board erred when it concluded that D.H. was not terminated for just cause.

We affirm.

### FACTS AND PROCEDURAL HISTORY

D.H. applied for unemployment compensation benefits after leaving her employment with S.S. The Indiana Department of Workforce Development issued an initial determination of benefits on July 23, 2010,

---

1. The majority agrees with the recent opinion in *LaDon A. Moore v. Review Board of the Indiana Department of Workforce Development*, 951 N.E.2d 301 (Ind.Ct.App.2011), on the use of names in workforce development cases, but in the interest of presenting another position on this issue, and to facilitate further discussion and debate, we have agreed to publish this opinion using initials in this case.

concluding that D.H. was eligible for unemployment benefits. S.S. appealed, and the Administrative Law Judge ("ALJ") who presided over the appeal concluded that S.S. had discharged D.H. for just cause and that D.H. was not entitled to unemployment benefits. D.H. appealed to the Review Board, which made the following findings and conclusions in reversing the ALJ's denial of benefits to D.H.:

> The Review Board adopts and incorporates the findings of fact of the Administrative Law Judge except to the extent inconsistent with this decision and as modified herein. The Claimant was present and participated in the hearing by telephone. The Employer also participated in the hearing by telephone and was represented by Perry Combs, Administrator.[1]
>
> [Internal footnote 1: The Review Board cannot overturn an Administrative Law Judge's decision based solely on a determination of demeanor credibility. *Stanley v. Review Bd.,* 528 N.E.2d 811, 815 (Ind.Ct.App.1988). Because the parties participated in the hearing by telephone, any explicit or implicit credibility determinations made by the Administrative Law Judge were *not* based on her observations of the witnesses' demeanor. "[T]o make an accurate credibility assessment based on demeanor one must be in a position to observe the witnesses as they testify." *Id.* No demeanor credibility determinations can be made based on the testimony offered in a telephone hearing. Because the Review Board listened to the hearing recording, the Review Board is in the same position as the Administrative Law Judge to make determinations of credibility regarding the witnesses' testimony. Of the different components of credibility, "only demeanor credibility remains outside the reviewing authority's abilities to assess." *Wampler v. Review Bd.,* 498 N.E.2d 998,

999 (Ind.Ct.App.1986). Thus, the Review Board is free to reject the Administrative Law Judge's findings of credibility and to make its own determinations as to the credibility of the witnesses at the hearing.]

The Employer is a nursing home. The Claimant worked full-time for the Employer as an activity director. The Claimant began working for the Employer on July 28, 1997. The Claimant became separated from employment on May 24, 2010.

On May 24, 2010, the Employer's Representative and the Assistant Director of Nursing met with the Claimant for the purpose of administering a third written warning. During the meeting, the Claimant's employment terminated.

During the hearing, the Employer's Representative testified that the Claimant became very upset and walked out of the meeting without permission. The Employer has a written policy in its employee handbook that states, "walking off the shift without the permission of your Supervisor will be considered a voluntary resignation." Emp. Ex. E2. The Claimant signed an acknowledgement form indicating that she received a copy of the employee handbook and understood its contents. Emp. Ex. E3. *Because the Claimant had not been given permission to leave, the Employer considered her to have voluntarily resigned her employment. The Employer's Representative also contended that the Employer had no intention of discharging the Claimant during the meeting.*

The Claimant, however, testified that she was told she was being discharged for receiving four warnings within a three week time-frame. She further testified that when she received her third written warning during the meet-

ing, the warning stated that she was discharged from employment. See Emp. Ex. 4. The Claimant also testified that the Employer has a policy that states accumulating three written warnings is grounds for discharge, and she had received three written warnings. She left the meeting after the Employer's Representative informed her that she had been relieved of her duties and asked her to leave.

Because the parties presented conflicting testimony regarding the circumstances of the Claimant's separation from employment, the Review Board must make a credibility determination. *The Review Board finds the Claimant's testimony more credible.* The Review Board also finds that the Claimant correctly testified as to the Employer's stated reason for her discharge.

The Employer has [a] written policy in its employee handbook that states, "[A] total of three (3) written warnings of any kind, in one (1) year is cause for immediate termination." See Emp. Ex. E4. Per the third written warning, this policy is contained on page 59 of the employee handbook. Emp. Ex. E4. Also, according to the contents of the third written warning, the Claimant received a verbal warning on March 31, 2010; a first written warning on April 15, 2010; and a second written warning on May 3, 2010. Emp. Ex. E4. On May 24, 2010, the Claimant received her third written warning and was discharged from employment. Emp. Ex. E4.

The Employer's Representative presented no evidence regarding why the Claimant was disciplined on any occasion. The Employer's Representative also presented no evidence regarding the enforcement of the Employer's discipline policy.

The Administrative Law Judge found that Claimant walked out of the meeting without permission in violation of the Employer's policy. The Administrative Law Judge determined that the Claimant knowingly violated a reasonable and uniformly enforced Employer rule. The Administrative Law Judge concluded that the Employer discharged the Claimant for just cause. . . .

**CONCLUSIONS OF LAW:** An Administrative Law Judge cannot change the Employer's stated reason for discharge. *Voss v. Review Board,* 533 N.E.2d 1020 (Ind.Ct.App.1989). In *Voss v. Review Board,* . . . the employer provided its employee a written discharge document stating that the discharge was for excessive telephone usage. At the Administrative Law Judge hearing, the employer advanced other reasons to discharge the employee. The court held that the Review Board was limited to considering the employer's stated reason for discharge. *Accord: Hehr v. Review Bd.,* 534 N.E.2d 1122 (Ind.Ct.App.1989); *Parkinson [Parkison] v. James River Corp.,* 659 N.E.2d 690 (Ind.Ct.App.1996).

In the present case, the Employer presented the Claimant with a third written warning which stated that she was being discharged and informed the Claimant that she was being discharged for accumulating three written warnings in violation of its discipline policy. The warning also listed the Claimant's previous warnings and the Employer's policy that subjects employees to immediate discharge for the accumulation of three written warnings in one year. During the hearing, however, the Employer's Representative changed the Employer[']s stated reason for discharge and testified that the Claimant's employment was terminated for walking out of the May 24, 2010[,] meeting without permission. Just as an Administrative Law

Judge cannot change the Employer's stated reason for discharge, neither can the Employer.

When an employee is discharged from employment in Indiana, the employee will not be disqualified from unemployment benefits unless the discharge was for just cause within the meaning of Indiana Code § 22–4–15–1(d). "Discharge for just cause" includes a "knowing violation of a reasonable and uniformly enforced rule of an employer, including a rule regarding attendance." Ind.Code § 22–4–15–1(d)(2). The burden was on the Employer to prove that it had just cause to discharge the Claimant. *Barnett v. Review Bd.*, 419 N.E.2d 249 (Ind.Ct.App.1981). To find that a discharge was for just cause, the Review Board must first find that: (1) there was a rule; (2) the rule was reasonable; (3) the rule was uniformly enforced; (4) the claimant knew of the rule; and (5) the claimant knowingly violated the rule. *Barnett*, 419 N.E.2d at 251.

Here, the Employer failed to meet its burden of proof. *The Employer presented no evidence during the hearing regarding any of the discipline issued to the Claimant. The Employer also presented no evidence that its discipline policy was reasonable, or that it was uniformly enforced. Therefore, it cannot be concluded that the Claimant knowingly violated a reasonable and uniformly enforced rule of the Employer.*

Furthermore, even if the Employer had discharged the Claimant for violating its walk-out policy, the Employer failed to prove that the Claimant actually violated the policy. The Employer claims it discharged the Claimant for walking out of the meeting on May 24, 2010[,] without permission. The Employer, however, terminated the Claimant's employment during that meeting.

By the time the Claimant had walked out, her employment relationship with the Employer had already been severed. Therefore, the Claimant did not violate the Employer's walk-out policy.

The Employer failed to meet its burden of proof. The Employer discharged the Claimant but not for proven just cause.

*ORDER:* The decision of [the] Administrative Law Judge is reversed. The Claimant is entitled to unemployment benefits.

Appellant's App. at 3–5 (some emphases added). This appeal ensued.

## DISCUSSION AND DECISION

In *Stanrail Corp. v. Review Board of the Department of Workforce Development*, 735 N.E.2d 1197, 1201–02 (Ind.Ct.App. 2000), *trans. denied*, this Court set out the applicable standard of review:

The Indiana Unemployment Compensation Act[1] provides that "[a]ny decision of the review board shall be conclusive and binding as to all questions of fact." Ind.Code § 22–4–17–12(a). When the Board's decision is challenged as contrary to law, the reviewing court is limited to a two-part inquiry into the "sufficiency of the facts found to sustain the decision" and the "sufficiency of the evidence to sustain the findings of facts." Ind.Code § 22–4–17–12(f). Under this standard, we are called upon to review: (1) determinations of specific or basic underlying facts; (2) conclusions or inferences from those facts, or determinations of ultimate facts; and (3) conclusions of law. *McClain v. Review Bd. of the Ind. Dep't of Workforce Dev.*, 693 N.E.2d 1314, 1317 (Ind.1998).

Review of the Board's findings of basic fact is subject to a "substantial evidence" standard of review. *Id.* In this

analysis, we neither reweigh the evidence nor assess the credibility of witnesses and consider only the evidence most favorable to the Board's findings. *General Motors Corp. v. Review Bd. of the Ind. Dep't of Workforce Dev.,* 671 N.E.2d 493, 496 (Ind.Ct.App.1996). We will reverse the decision only if there is no substantial evidence to support the Board's findings. *KBI, Inc. v. Review Bd. of the Ind. Dep't of Workforce Dev.,* 656 N.E.2d 842, 846 (Ind.Ct.App.1995).

The Board's determinations of ultimate facts involve an inference or deduction based upon the findings of basic fact and [are] typically reviewed to ensure that the Board's inference is reasonable. *McClain,* 693 N.E.2d at 1317-18. We examine the logic of the inference drawn and impose any applicable rule of law. *Id.* at 1318. Some questions of ultimate fact are within the special competence of the Board, and it is therefore appropriate for us to accord greater deference to the reasonableness of the Board's conclusion. *Id.* However, as to ultimate facts which are not within the Board's area of expertise, we are more likely to exercise our own judgment. *Id.*

■ In Indiana, an unemployed claimant is ineligible for unemployment benefits if he is discharged for "just cause." *See Russell v. Review Bd. of Ind. Dep't of Emp't & Training Servs.,* 586 N.E.2d 942, 948 (Ind.Ct.App.1992). Here, S.S. contends that it terminated D.H.'s employment for just cause and that the Review Board erred when it concluded otherwise. S.S. bore the burden to prove that D.H.'s discharge was for just cause. *See id.*

■ Just cause includes discharge for a knowing violation of a reasonable and uniformly enforced rule of an employer. Ind. Code § 22–4–15–1(d)(2). An employer's asserted work rule must be reduced to

writing and introduced into evidence to enable this Court to fairly and reasonably review the determination that an employee was discharged for just cause for the knowing violation of a rule. *Stanrail Corp.,* 735 N.E.2d at 1205. To have knowingly violated an employer's rule, the employee must know of the rule and must know that his conduct violated the rule. *Id.* at 1203. The Board must make a finding as to whether an employee knew that his conduct violated an employer rule because the text of Indiana Code Section 22–4–15–1(d)(2) requires a "knowing violation" of a rule rather than merely a violation of a known rule. *Id.*

■ Here, at the hearing before the ALJ, S.S. did not argue that D.H. was discharged for just cause. Instead, S.S.'s sole contention was that D.H. voluntarily resigned. Thus, as the Review Board concluded, S.S. did not present evidence that D.H. was discharged for knowingly violating a reasonable and uniformly enforced rule. *See Coleman v. Review Bd. of Indiana,* 905 N.E.2d 1015, 1020 (Ind.Ct. App.2009). Perry Combs, S.S.'s representative at the telephonic hearing, testified in relevant part as follows:

Q: Did [D.H.] quit her employment?

A: This is where we were talking to her in a meeting and she walked out of the facility and she didn't clock out. According to our handbook, if somebody walks out they voluntarily resign.

\* \* \*

Q: What is Exhibit E2?

A: E2 is a section of our handbook which has been signed that she acknowledgement [sic] of employment on E3, and it's just stating, the circle it says absence and occurrences and this definition does not alter the fact that failure to return from leave of absence or walking off the shift without the permission of

your supervisor will be considered a voluntary resignation.

\* \* \*

A: Okay. On Exhibit E4, and it says state corrective action and to eliminate the problem, where it says discharge from employment that was written, [D.H.] did not see that when I handed the paper to her. I was talking to her and letting her know this is her final written warning. *I never said one word about her being terminated.* She's not telling the truth.

\* \* \*

Q: Mr. Combs, could you just clarify what is the Employer's progressive discipline process?

A: You get an oral warning, first written warning, second warning, and a third written warning you can be discharged.

JUDGE: Looking at the warning notice, Employer's Exhibit E4 . . . .

A: Right.

JUDGE: . . . it has verbal warning, first warning, second warning, third warning . . . .

A: Right.

Q: And is that 3/31 the date of the verbal warning?

A: Where do you see 3/31 at?

JUDGE: On the top of the Employee Warning there's dates.

A: Oh, verbal warning's the 3/31. Yeah, the first one. Those are different ones, the others.

Q: So there was a verbal warning on 3/31/10. Is that correct?

A: Yes. A written, the first written on 4/5, and the second written on 5/3.

Q: So this warning on May 24th would've been the third written?

A: It could've, would've been. Yes. She did not even read it. She didn't let me talk. After I said this is your third written warning she, I handed her this paper she thrown [sic] it in the air and walked out of the room.

Q: So [D.H.] was only given a warning. She would not have been discharged for the incident warranting the warning?

A: Well it says if you get discharged if you [sic], you have one more time to get discharged. You can either discharge a person at that point or you can discharge them, you can give them another chance, but she did not have the courtesy to let me even speak to her about the warning that she was getting. *She got up and left the office and our policy states that if she leaves the facility without permission it's considered a voluntary walk off, and that's how I take it.*

Transcript at 6–14 (emphases added).

The Review Board found D.H. more credible than Combs and concluded that S.S. had terminated D.H.'s employment. S.S. bore the burden to prove that the termination of D.H.'s employment was for just cause. But, again, S.S. did not contend during the hearing that D.H. was terminated. And S.S. did not present evidence that (1) there was a rule; (2) the rule was reasonable; (3) the rule was uniformly enforced; (4) the claimant knew of the rule; and (5) the claimant knowingly violated the rule. *See Barnett,* 419 N.E.2d at 251. S.S.'s sole claim before the ALJ was that D.H. voluntarily resigned. S.S. could have argued in the alternative that she was terminated for just cause, but it did not.

In support of its determination, the Review Board cited *Voss v. Review Board Department of Employment & Training Services,* 533 N.E.2d 1020, 1021 (Ind.Ct. App.1989), where we held that an ALJ or Review Board making a determination regarding unemployment benefits may only

consider an employer's stated grounds for an employee's discharge. In particular, we said

> whether or not other grounds may have existed for [the employee's] discharge is irrelevant because [the employer] did not exercise its discretion to discharge [the employee] on those grounds and neither the Board nor this court can assume it would have done so. Thus the issue is whether the *stated* grounds for discharge have a basis in fact and constitute just cause.

*Id.* Here, again, during the hearing before the ALJ, S.S. did not allege that D.H. was discharged, let alone state any grounds for her discharge. S.S. merely alleged that D.H. voluntarily resigned. The Review Board found otherwise, and we will not reweigh the evidence. We cannot consider S.S.'s new argument on appeal that D.H. was terminated for just cause. *See Troxel v. Troxel,* 737 N.E.2d 745, 752 (Ind.2000) (reiterating well-settled rule that party may not raise issue for first time on appeal).

Affirmed.

ROBB, C.J., concurs.

CRONE, J., concurs with separate opinion.

CRONE, Judge, concurring.

I fully agree with Judge Najam's decision. I write separately, however, because I feel that this decision should be published to underscore the importance of complying with Indiana Administrative Rule 9(G)(1)(b)(xviii) by using the parties' initials instead of their full names in Review Board case captions and opinions.

In a recent case before this Court, *L.M. v. Review Board of the Indiana Department of Workforce Development,* 951 N.E.2d 301 (Ind.Ct.App.2011), the Review Board, represented by the Attorney General, filed a motion requesting an order that "this Court publish the names of the parties, both individuals and employing units, in this, and in all future cases involving the Department." In the published opinion in that case, the panel chose to use the parties' names instead of initials and attempted to justify the same under existing rules and statutes. I believe that choice was contrary to law.

To better understand my position, it would be helpful to consider the following legal provisions that govern the confidentiality of certain information in Review Board cases. Indiana Administrative Rule 9(G)(1) says, "The following information in case records is excluded from public access and is confidential: . . . [ (b) ](xviii) All records of the Department of Workforce Development as declared confidential by Ind. Code § 22–4–19–6." Indiana Code Section 22–4–19–6 says,

> Except as provided in subsections (d) and (f) [which are not relevant here], information obtained or obtained from any person in the administration of this article and the records of the department relating to the unemployment tax or the payment of benefits is confidential and may not be published or be open to public inspection in any manner revealing the individual's or the employing unit's identity, except in obedience to an order of a court or as provided in this section.

Ind.Code § 22–4–19–6(b). Finally, Administrative Rule 9(G)(4)(d) says,

> Orders, decisions, and opinions issued by the court on appeal shall be publicly accessible, *but each court on appeal should endeavor to exclude the names of the parties and affected persons, and any other matters excluded from public access,* except as essential to the resolution of litigation or appropriate to fur-

ther the establishment of precedent or the development of the law.

(Emphasis added.)

It is important to note that the Indiana Supreme Court adopted Administrative Rule 9(G)(1)(b)(xviii) at the specific request of a former Chief Judge of this Court. On August 6, 2009, that judge wrote a letter to Chief Justice Randall Shepard that reads as follows:

> In recent months, our administrative staff has been struggling with how to best ensure compliance with Administrative Rule 9 in appeals arising from unemployment compensation decisions of the Review Board of the Indiana Department of Workforce Development. Indiana Code section 22–4–19–6 makes the records of the Department of Workforce Development relating to the payment of benefits confidential, but it is not referenced in Administrative Rule 9. As it currently stands, Administrative Rule 9(G)(1)(b) requires that information "excluded from public access pursuant to Indiana statute" is confidential. For the sake of clarity to litigants and the courts, I recommend that the Rule's list of records excluded from public access under Administrative Rule 9(G)(1)(b)(i)-(xvii) be expanded to include specific reference to Review Board matters and Indiana Code section 22–4–19–6.

> I also ask that the Clerk be directed to immediately begin treating the entire case file in Review Board matters as excluded from public access, in much the same way that the Clerk handles case records in juvenile and paternity matters. As a practical matter, such treatment of Review Board cases will be much less cumbersome on the Clerk's office, which currently routes every Review Board order not filed on light green paper to this Court for an order to the parties to re-file their documents

in accordance with the procedures of Trial Rule 5(G) and Appellate Rule 9(J).

Not coincidentally, the Indiana Supreme Court's Committee on Rules of Practice and Procedure adopted Administrative Rule 9(G)(1)(b)(xviii) on September 15, 2009, to clarify the rule and specifically include the Department of Workforce Development records, and that provision became effective on January 1, 2010. It is difficult to discern how the author of the letter requesting the adoption of Administrative Rule 9(G)(1)(b)(xviii) also could have authored *L.M.*, which ignores the existence of that letter and contradicts its content.

To reiterate, in *L.M.* the Review Board filed a motion requesting an order that "this Court publish the names of the parties, both individuals and employing units, in this, and in all future cases involving the Department." The Review Board stated that it had "not disclosed the names of individuals and employing units in appeals of Review Board decisions to the Indiana Court of Appeals and the Indiana Supreme Court" since June 2009 in compliance with an order from this Court issued in two prior cases. The Review Board further stated that it "*now* suggests that a proper interpretation of Indiana Code section 22–4–19–6 is that it protects unemployment records from public access and from use while that information resides with the Department" but that "the names of individuals and employing units need not be kept confidential in actions involving the court system in an otherwise public proceeding." (Emphasis added.)

In its decision in *L.M.*, another panel of this Court addressed the Review Board's motion to publish the names of the parties as follows:

> Indiana Code section 22–4–19–6 is directed to the Department of Workforce Development. The statute initially

states that employers are to "keep true and accurate records containing information the [D]epartment considers necessary" and that the records are open to inspection by an authorized representative of the Department. Ind.Code § 22–4–19–6(a). It then imposes the following obligation on the Department:

(b) ... [I]nformation obtained or obtained from any person in the administration of this article and the records of the department relating to the unemployment tax or the payment of benefits is confidential and may not be published or be open to public inspection in any manner revealing the individual's or the employing unit's identity, except in obedience to an order of a court or as provided in this section.

This is essentially the same obligation that has been imposed on the Department since 1947.

Pursuant to this statute, unemployment records within the Department have always remained confidential. However, once a case was appealed to this Court, and despite the obligations of section 22–4–19–6, which have existed for over sixty years, the Attorney General (who represents the Review Board), employers, employees, other attorneys before this Court, and both the Indiana Supreme Court and this Court routinely disclosed the full names of the parties in pleadings and in opinions on appeal.

On January 1, 2010, Administrative Rule 9(G), which concerns information in court records that is excluded from public access, was amended to incorporate by reference Indiana Code section 22–4–19–6. This amendment has led some to believe that we are now required to keep the names of the parties confidential on appeal. Others disagree. Since January 1, 2010, there have been sixteen reported cases from this Court in which the Review Board is named a party. Four of those cases have used the full names of the parties. *See Koewler v. Review Bd. of Ind. Dep't of Workforce Dev.*, 951 N.E.2d 272 (Ind.Ct.App.2011); *Lush v. Review Bd. of Ind. Dep't of Workforce Dev.*, 944 N.E.2d 492 (Ind.Ct. App.2011); *Wolf Lake Pub. Inc. v. Review Bd. of Ind. Dep't of Workforce Dev.*, 930 N.E.2d 1138 (Ind.Ct.App. 2010); *Value World Inc. of Ind. v. Review Bd. of Ind. Dep't of Workforce Dev.*, 927 N.E.2d 945 (Ind.Ct.App.2010).

Section 22–4–19–6(b) includes an exception for "an order of a court," and Administrative Rule 9(G)(4)(d) provides that although courts on appeal "should endeavor to exclude the names of parties and affected persons, and any other matters excluded from public access," they may disclose names "as essential to the resolution of litigation or appropriate to further the establishment of precedent or the development of the law." Although there are some who believe that disclosing the names of the parties in this case does not meet either provision, we note that using initials or other generic identifiers in every case makes one virtually indistinguishable from another. For example, the designation the Clerk's Office gave this case is "*L.M. v. Review Board.*" A search of our docket by litigant name yields over 100 cases designated "Review Board." If we use L.M., the somewhat more descriptive initials of the claimant in this case, a search of the docket yields thirty-four cases already given that designation.

In sum, Administrative Rule 9(G) merely incorporated Section 22–4–19–6 as it had been interpreted for decades. With that in mind, reading the authority granted by Administrative Rule 9(G)(4)(d) together with section 22–4–19–6(b)'s exception for court orders and considering the Review Board's inter-

pretation of its own obligations under the statute as well as the interpretation of the statute by the Indiana Supreme Court and this Court in countless cases for over sixty years, we believe it is appropriate for this Court to use the full names of parties in routine appeals from the Review Board.

951 N.E.2d at 304–06 (footnote omitted).

I disagree with this analysis in several respects. First, the history lesson regarding Indiana Code Section 22–4–19–6 is irrelevant, given that the statute specifically applies to the Department and not this Court. The much more recently enacted Administrative Rule 9(G)(1)(b)(xviii) *does* apply to this Court, however, and I believe that we must follow it until it is repealed by the Indiana Supreme Court.

Second, as for the complaint that "using initials or other generic identifiers in every case makes one case virtually indistinguishable from another," that may be true as far as the case captions are concerned, but our written opinions are easily searchable online by interested members of the bar and public. In any event, I do not believe that minor annoyances are sufficient grounds for disregarding a rule adopted by our supreme court, and I do not believe that disclosing the names of the parties in unemployment cases is "essential to the resolution of litigation or appropriate to further the establishment of precedent or the development of the law" for purposes of Administrative Rule 9(G).

Third, to the extent *L.M.* suggests that Indiana Code Section 22–4–19–6(b)'s exception for "an order of a court" authorizes our disclosure of the parties' names in written opinions, I would simply note that the statute applies only to the Department and that an "order" is not the same thing as an "opinion," as Administrative Rule 9(G) makes clear.

More generally, I am dubious about the propriety of a single panel of this Court issuing a ruling on a motion in a single case that will affect the privacy rights of unemployment litigants in future cases. Such issues must be governed by relevant procedural rules and written opinions interpreting those rules. As far as I am aware, the confidentiality issue was not raised by the *L.M.* parties before the Review Board or in their appellate briefs.

Our Court has recently debated the use of names instead of initials in Review Board cases and has been unable to reach a consensus. A member of our Court appeared before the Indiana Supreme Court's Records Management Committee on May 13, 2011, to request the amendment of Administrative Rule 9(G)(1)(b)(xviii) to allow the use of parties' full names in Review Board cases. The committee denied my colleague's request.

Presently, I do not see how Administrative Rule 9(G) and Indiana Code Section 22–4–19–6 can be read to allow the disclosure of the full names of unemployment claimants and employers in decisions issued by this Court. The Clerk of the Supreme Court, Court of Appeals, and Tax Court for the State of Indiana agrees with my interpretation of Administrative Rule 9(G)(1)(b)(xviii), as evidenced by its caption for this case in this Court's electronic docket: "Company v. Review Board." I have no position on the propriety of or the wisdom behind the rule as written, but I believe that we must follow it until such time as it is repealed by our supreme court. I would encourage our supreme court to visit this issue by court opinion or rule change to give proper guidance in and finality to this matter.