**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Sep 03 2014, 10:27 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT:

**DAVID M. AUSTGEN**
**ADAM M. SWORDEN**
Austgen Kuiper Jasaitis, P. C**.**
Crown Point, Indiana

ATTORNEY FOR APPELLEE
MARY DIXON:

**TERESA A. MASSA**
Valparaiso, Indiana

ATTORNEYS FOR APPLLEE
REVIEW BOARD:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**KRISTIN GARN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| TOWN OF CEDAR LAKE, | ) | |
| Appellant, | ) | |
| | ) | |
| vs. | ) | No. 93A02-1402-EX-072 |
| | ) | |
| REVIEW BOARD OF THE | ) | |
| INDIANA DEPARTMENT OF | ) | |
| WORKFORCE DEVELOPMENT and | ) | |
| MARY J. DICKSON | ) | |
| Appellees. | ) | |

APPEAL FROM THE REVIEW BOARD OF THE DEPARTMENT OF WORKFORCE
DEVELOPMENT
Steven F. Bier, Chairperson
George H. Baker, Member
Lawrence A. Dailey, Member
Cause No. 13-R-04534

**September 3, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**FRIEDLANDER, Judge**

The Town of Cedar Lake (the Town) appeals from the decision of the Review Board of the Indiana Department of Workforce Development (the Review Board) that Mary J. Dickson is entitled to unemployment benefits following her discharge from employment.[1] The Town presents the following restated issue for our review: Is the Review Board's determination that Dickson was not dismissed for good cause supported by substantial evidence?

We affirm.

The Town hired Dickson as the director of its Parks and Recreation Department in 1990, and she served in that capacity until her dismissal in 2013. Dickson was also active in a number of civic organizations and, at the time relevant to this appeal, served as president of the Cedar Lake Kiwanis Club. Every year, an event called Summer Fest is held over the Fourth of July weekend in Cedar Lake. Numerous churches and non-profit organizations participate in Summer Fest. In the spring of 2013, Adam Noel, who was tasked with running a bingo tent at the 2013 Summer Fest on behalf of the Knights of Columbus, approached Dickson and asked her if she would be interested in working a shift in the bingo tent, and she agreed to do so. Noel mistakenly assumed that Dickson would work the event on behalf of the Parks and Recreation Department. In fact, Dickson planned to work the event on behalf of the Kiwanis Club, which voted to

_____

[1] We identify the claimant and employing unit by name because the parties have made no affirmative request to keep their identities confidential. *See J.M. v. Review Bd. of Ind. Dep't of Workforce Dev.*, 975 N.E.2d 1283 (Ind. 2012).

undertake the event as a group. The Kiwanis Club planned to use the profits from the bingo event to purchase various items to donate to the Parks and Recreation Department.[2]

Dickson, along with other volunteers, ran the bingo tent on behalf of the Kiwanis Club on the evening of July 3, 2013. At the end of the night, the proceeds from the event were placed in the Summer Fest drop box located at the Town's office for safekeeping. After Noel deducted rental fees and corrected an accounting error, the Kiwanis Club made a total of $541.82. The next day, the funds were turned over to Dickson because the Kiwanis Club treasurer, Dana Griner, was on vacation. Dickson did not see Griner again until an August 19, 2013 meeting of the Kiwanis Club, at which time Dickson turned the money over to Griner.

Meanwhile, at some point in August 2013, the Town Manager, Ian Nicolini, became aware that Dickson had worked at the bingo tent. Nicolini believed that the proceeds from the event belonged to the Town and that Dickson had unauthorized possession of the funds and had failed to properly account for them pursuant to the Town's donation acceptance policy. Even after Dickson explained that she had worked the event in her capacity as president of the Kiwanis Club and not as a Town employee,

---

[2] We note that the Town repeatedly mischaracterizes the record by asserting that the Kiwanis Club planned to donate the proceeds of the bingo event to the Parks and Recreation Department. This assertion is not supported by the record. The testimony of the witnesses and the minutes of the Kiwanis Club meeting uniformly establish that the Kiwanis Club intended to use the proceeds to purchase items that it would then donate to the Parks and Recreation Department. We also remind counsel for the Town of their duty under the Indiana Appellate Rules to state the facts in accordance with the standard of review—i.e., the facts most favorable to the Review Board's findings. Ind. Appellate Rule 46(A)(6) (b)(providing that a statement of facts "shall be stated in accordance with the standard of review appropriate to the judgment or order being appealed"); *S.S. LLC v. Review Bd. of Ind. Dep't of Workforce Dev.*, 953 N.E.2d 597 (Ind. Ct. App. 2011) (noting that in an appeal from a decision of the Review Board, we will consider only the evidence most favorable to the Board's findings).

3

Nicolini still believed that the money earned should be considered a donation to the Parks and Recreation Department.

On August 26, 2013, Nicolini sent Dickson written notice that she was "terminated from [her] employment with the Town of Cedar Lake pending final action by the Cedar Lake Town Council[.]" *Exhibits* at 176. In the notice, Nicolini alleged that Dickson had received "a cash donation from a Knights of Columbus Bingo Fundraiser on July 3, 2013" in the amount of $541.82 and that she had not "provided any accounting for the donations or sought to properly receipt the donation from a member of the Knights of Columbus into Town Funds." *Id.* Nicolini further stated that he had previously given all department heads an oral directive explaining how to properly account for donations using a donation acceptance form. Nicolini noted that Dickson had expressed an intention to use the "donated funds" to buy materials for the Parks and Recreation Department, but stated that Dickson had "a responsibility to properly receipt and account for the donation prior to spending donation funds which also have protocols for the use of such funds." *Id.* The termination notice also indicated that Dickson had committed five prior documented violations of the Town's Personnel Policy Manual. Nicolini concluded that "[i]n considering your previous violations of the Personnel Policy Manual, your current insubordinate actions by failing to properly account for a cash donation or even disclose that you were in receipt of a cash donation, and the previous instance of improper financial management within the past six (6) months, your present actions/inactions constitute serious misconduct." *Id.* at 177. As a result, Dickson was placed on suspension with pay pending a final termination decision by the Town Council

4

following a hearing.[3]  *Id.* at 178.  An administrative hearing was held on September 3, 2013, at the conclusion of which the Town Council voted to terminate Dickson's employment.

Dickson subsequently applied for unemployment compensation.  On October 3, 2013, a claims deputy of the Indiana Department of Workforce Development determined that Dickson was not discharged for just cause and was therefore eligible for benefits.  The Town appealed the determination of the claims deputy, and an evidentiary hearing was held before an Administrative Law Judge (ALJ).  On December 13, 2013, the ALJ issued a decision affirming the conclusion of the claims deputy.  In pertinent part, the ALJ found as follows:

> In the present matter, [the Town] failed to meet its burden.  There were rules contained in [the Town's] Handbook.  The rules were reasonable ensuring employees performed as instructed and properly maintained [the Town's] property so there was no loss to [the Town].  [The Town] uniformly enforced the rules with all employees who violate them treated equally with discharge.  Claimant knew the rules as she signed stating she read and intended to comply with its [sic] terms.  However, [the Town] failed to establish Claimant knowingly violated the policies.
>
> The Kiwanis club worked the event and the profits were theirs not the [Town's] so Claimant did not misuse [the Town's] property when she did not turn it in.  The club also voted to use the funds to make in kind donations not a monetary donation.  Therefore, Claimant had no duty to create and submit a donation form for the profits so she did not fail to follow instruction to fill out a donation form at that time.  Therefore, [the Town] discharged Claimant but not for just cause under Indiana unemployment law.

---

[3] The Town incorrectly asserts that the termination notice instructed Dickson to tender receipts and provide an accounting to the Town within five days, which she failed to do.  Although Nicolini testified that the termination notice contained such instructions, our review of the record reveals otherwise.  The termination notice did not instruct Dickson to provide an accounting; instead, it simply demanded payment of $541.82, i.e., the proceeds from the bingo event, within five days.

*Appellant's Appendix* at 3.  The Town appealed to the Review Board, and on January 8, 2014, the Review Board issued a decision adopting and incorporating the ALJ's findings of fact and conclusion of law and affirming the ALJ's decision.  The Town now appeals.

The Indiana Unemployment Compensation Act provides that "[a]ny decision of the review board shall be conclusive and binding as to all questions of fact."  Ind. Code Ann. § 22-4-17-12(a) (West, Westlaw current with all 2014 Public Laws of the 2014 Second Regular Session and Second Regular Technical Session of the 118th General Assembly).  When the Review Board's decision is challenged as contrary to law, the reviewing court is limited to a two-part inquiry into the "sufficiency of the facts found to sustain the decision and the sufficiency of the evidence to sustain the findings of fact."  I.C. § 22-4-17-12(f); *McHugh v. Review Bd. of the Ind. Dep't of Workforce Dev.*, 842 N.E.2d 436 (Ind. Ct. App. 2006).  Under this standard, we are called upon to review "(1) determinations of specific or 'basic' underlying facts, (2) conclusions or inferences from those facts, sometimes called 'ultimate facts,' and (3) conclusions of law."  *McClain v. Review Bd. of the Ind. Dep't of Workforce Dev.*, 693 N.E.2d 1314, 1317 (Ind. 1998).

We review the Review Board's findings of basic fact under a "substantial evidence" standard.  *Id.*  In this analysis, we neither reweigh the evidence nor assess the credibility of witnesses, and we consider only the evidence most favorable to the Review Board's findings.  *McClain v. Review Bd. of the Ind. Dep't of Workforce Dev.*, 693 N.E.2d 1314.  We will reverse only if there is no substantial evidence to support the findings or if a reasonable person, considering only the evidence supporting those

6

findings, would be bound to reach a different result. *KBI, Inc. v. Review Bd. of the Ind. Dep't of Workforce Dev.*, 656 N.E.2d 842 (Ind. Ct. App. 1995).

The Review Board's conclusions as to ultimate facts involve an inference or deduction based upon the findings of basic fact, and they are reviewed to ensure that the Review Board's inference is reasonable. *McClain v. Review Bd. of the Ind. Dep't of Workforce Dev.*, 693 N.E.2d 1314. Finally, we review conclusions of law to determine whether the Review Board correctly interpreted and applied the law. *McHugh v. Review Bd. of the Ind. Dep't of Workforce Dev.*, 842 N.E.2d 436.

The Act provides unemployment benefits to individuals who are "unemployed through no fault of their own." I.C. § 22-4-1-1 (West, Westlaw current with all 2014 Public Laws of the 2014 Second Regular Session and Second Regular Technical Session of the 118th General Assembly); *Albright v. Review Bd. of Ind. Dep't of Workforce Dev.*, 994 N.E.2d 745, 749 (Ind. Ct. App. 2013). I.C. § 22-4-15-1(a) (West, Westlaw current with all 2014 Public Laws of the 2014 Second Regular Session and Second Regular Technical Session of the 118th General Assembly) provides that an unemployment claimant is ineligible for unemployment benefits if the claimant is discharged from employment for "just cause". *See Recker v. Review Bd. of Ind. Dep't of Workforce Dev.*, 958 N.E.2d 1136 (Ind. 2001). When an employer asserts that an employee was discharged for just cause, the employer bears the burden of establishing a prima facie case of discharge for just cause. *Albright v. Review Bd. of Ind. Dep't of Workforce Dev.*, 994 N.E.2d 745. Once the employer satisfies this burden, the burden shifts to the employee to rebut the employer's evidence. *Id.* Whether an employer had just cause to

7

discharge an unemployment claimant is a question of fact for the Review Board. *Gibson v. Review Bd. of the Ind. Dep't of Workforce Dev.,* 671 N.E.2d 933 (Ind. Ct. App. 1996).

Just cause for discharge includes "refusing to obey instructions" and "knowing violation of a reasonable and uniformly enforced rule of an employer[.]" I.C. § 22-4-15-1(d); *see also Coleman v. Review Bd. of Ind. Dep't of Workforce Dev.*, 905 N.E.2d 1015 (Ind. Ct. App. 2009). "To have knowingly violated an employer's rule, the employee must know of the rule and must know that his conduct violated the rule." *S.S. LLC v. Review Bd. of Ind. Dep't of Workforce Dev.*, 953 N.E.2d at 602.[4] In this case, the ALJ found that the rule regarding accounting procedures for donations was uniformly enforced and that Dickson was aware of the rule. The ALJ concluded, however, that Dickson had not violated the rule. Specifically, the ALJ found that Dickson ran the bingo tent in her capacity as president of the Kiwanis Club, not as a Town employee. Further, the ALJ found that the money raised at the event belonged to the Kiwanis Club, not the Town, and that no cash donation was made. These findings are amply supported by the evidence.

---

[4] Additionally, this court has explained that "[a]n employer's asserted work rule must be reduced to writing and introduced into evidence to enable this Court to fairly and reasonably review the determination that an employee was discharged for just cause for the knowing violation of a rule." *S.S. LLC v. Review Bd. of Ind. Dep't of Workforce Dev.*, 953 N.E.2d at 602. In this case, no written version of the donation acceptance policy was introduced into evidence. In the termination notice provided to Dickson, Nicolini asserted that he had given all department heads, including Dickson, "an oral directive explaining how to properly account for donations[.]" *Exhibits* at 176. The record contains a copy of the handwritten notes from the staff meeting at which this directive was apparently given, as well as a blank donation acceptance form, but neither of these documents set forth the donation acceptance policy. *See KBI, Inc. v. Review Bd. of Ind. Dep't of Workforce Dev.*, 656 N.E.2d 842 (concluding that an employer failed to satisfy its burden of showing that the claimant was discharged for just cause for violating a uniformly enforced work rule by failing to introduce into evidence a written policy). Because neither the parties nor the ALJ have addressed this issue, however, we do not base our decision on the Town's failure to introduce into evidence a written copy of the donation acceptance procedures.

Nevertheless, the Town apparently believes that the funds raised at the bingo event were a donation simply because the Kiwanis Club membership had voted at a recent meeting to use them to purchase items for the Parks and Recreation Department. The Town is incorrect. The evidence presented at the hearing clearly establishes that the Kiwanis Club never delivered any cash to the Parks and Recreation Department and never had any intention of doing so. The intention of the Kiwanis Club's members to use the funds to purchase items for the Parks Department does nothing to alter the ownership of those funds. Indeed, the Kiwanis Club membership was in no way bound by its previous decision to use the money to purchase items for the Parks and Recreation Department and could have decided at any time to use the money for a different purpose. Because no cash donation was made, Dickson cannot be said to have violated the Town's rules concerning the documentation of the receipt of cash donations.

The Town also argues that even if Dickson did not violate the procedures relating to the acceptance of cash donations, she violated the procedures relating to the receipt of in-kind donations. We note, however, that Dickson's termination notice referred to a cash donation only. Moreover, the evidence presented at the hearing established that Dickson did not violate the donation acceptance procedures with respect to in-kind donations. The evidence shows that the Kiwanis Club donated only one item, a telephone system, to the Parks Department prior to Dickson's termination. A receipt submitted into evidence at the hearing shows that the telephone cost less than fifty dollars. Accordingly, no donation acceptance form was required pursuant to the Town's policy regarding *de minimis* in-kind donations. The Town also seems to suggest that the Kiwanis Club

9

donated banners, which were valued at over one hundred dollars, prior to Dickson's termination. The evidence presented at the hearing, however, establishes that the banners belonged to the Kiwanis Club and had been purchased for use at events the Club sponsored jointly with the Town. Because the Kiwanis Club retained ownership of the banners, they were never donated to the Town. The remaining receipts submitted into evidence show that all additional purchases of items were made after Dickson was terminated.

Finally, the Town argues that even if Dickson did not violate the Town's donation acceptance policy, she was nevertheless terminated for just cause pursuant to the Town's "Progressive Discipline Policy" based on five previous violations of the Town's Personnel Policy Manual.[5] *Appellant's Brief* at 8. Dickson and the Review Board argue that the Town has waived this argument, and we agree. At the hearing before the ALJ, the Town focused exclusively on Dickson's actions with respect to the proceeds from the bingo event. Although the Town made passing reference to previous infractions, it did not discuss what those infractions were or set forth any clear argument that they were alternative grounds for termination. Moreover, in its notice of appeal to the Review Board, the Town made no reference to previous infractions, arguing only that it had carried its burden to show just cause for the termination because "[Dickson] did not

---

[5] The Town cites *Wynkoop v. Town of Cedar Lake*, 970 N.E.2d 230 (Ind. Ct. App. 2012), *trans. denied*, for the proposition that this court "has reviewed and held valid" the Town's Progressive Discipline Policy. *Appellant's Brief* at 14. The "validity" of the Progressive Discipline Policy was not at issue in *Wynkoop*. Instead, this court considered whether the Town's Personnel Policy Manual created a property right in continued employment, and concluded that it did not. *Wynkoop* did not address issues of unemployment compensation, and it is therefore irrelevant to the issues before us.

follow [the Town's] uniform rule for disclosure of donated money or property in-kind." *Appellees' Appendix* at 1. *See Cunningham v. Review Bd. of Ind. Dep't of Workforce Dev.*, 913 N.E.2d 203, 205 (Ind. Ct. App. 2009) (explaining that "a party who fails to raise an issue before an administrative body has waived the issue on appeal"). Nevertheless, the Town argues that it has not waived this argument because the record contains evidence of Dickson's prior violations of the Personnel Policy Manual. Specifically, the Town notes that the violations were referenced in Dickson's termination notice and in a memorandum of law submitted to the ALJ. But in light of the Town's failure to argue at the hearing or in its notice of appeal to the Review Board that the prior infractions constituted just cause for Dickson's termination, it was reasonable for the ALJ and the Review Board to conclude that the Town had abandoned that argument.

Moreover, it is apparent that the Town's mistaken belief that Dickson had violated the donation acceptance procedures was the determining factor in its decision to terminate Dickson. Although the Town reprimanded Dickson for the previous violations, it chose not to terminate her for those infractions. While the previous infractions might have been a contributing factor, the Town's ultimate decision to terminate Dickson was clearly based on its belief that Dickson had failed to properly account for donations to the Parks and Recreation Department. *See Voss v. Review Bd. of Emp't & Training Servs.*, 533 N.E.2d 1020, 1021 (Ind. Ct. App. 1989) (explaining that "[w]hether or not other grounds may have existed for [a claimant's] discharge is irrelevant because [the employer] did not exercise its discretion to discharge [the claimant] on those grounds"). In other words, Dickson would not have been discharged but for the Town's incorrect

11

conclusion that she had violated the donation acceptance policy.[6]  For all of these reasons, we conclude that the Review Board's finding that Dickson was not discharged for just cause was supported by substantial evidence.

Judgment affirmed.

NAJAM, J., and BAILEY, J., concur.

---

[6] In its reply brief, the Town alleges several "other violations", including misuse of the Town's tax exempt identification number and Sam's Club commercial account and failure to follow purchasing procedures. *Reply Brief* at 9. Because the Town did not raise these arguments in its principal appellate brief, they are waived. *See Showley v. Kelsey*, 991 N.E.2d 1017, 1021 n.2 (Ind. Ct. App. 2013) (noting that "it is well settled that grounds for error may only be framed in an appellant's initial brief and if addressed for the first time in the reply brief, they are waived"), *trans. denied*.