**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Jan 18 2012, 8:35 am

CLERK
of the supreme court,
court of appeals and
tax court

APPELLANT PRO SE:

**ADAM C. HANNA**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**STEPHANIE ROTHENBERG**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| ADAM HANNA, ) | |
| ) | |
| Appellant, ) | |
| ) | |
| vs. ) | No. 93A02-1107-EX-667 |
| ) | |
| REVIEW BOARD OF THE INDIANA ) | |
| DEPARTMENT OF WORKFORCE ) | |
| DEVELOPMENT, ) | |
| ) | |
| Appellee. ) | |

APPEAL FROM THE REVIEW BOARD OF THE INDIANA DEPARTMENT
OF WORKFORCE DEVELOPMENT
The Honorable Steven F. Bier, Chairperson
Cause No. 11-R-2928

**January 18, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BROWN, Judge**

Adam Hanna, *pro se*, appeals a decision by the Review Board of the Indiana Department of Workforce Development ("Board") denying his unemployment benefits. We find one issue dispositive, namely, whether Hanna waived his claims on appeal. We affirm.

Hanna worked as a part-time floor server for an MCL Restaurant ("Employer") beginning in July 2008. At some point, Hanna sustained a fracture to his hand. On December 27, 2010, Hanna was told by Nick Eagle, a general manager for Employer, that he needed to see a doctor regarding his hand.

Hanna applied for unemployment benefits, and on March 21, 2011, a deputy with the Indiana Department of Workforce Development issued a determination of eligibility which indicated that the "Separation Date" was December 27, 2010, and determined that Hanna had not been discharged for just cause. Exhibits at 1. Employer filed an appeal from the deputy's determination stating that Hanna was "considered to have voluntarily quit after failing to return from an approved leave of absence" due to sustaining a fracture to his hand. Exhibits at 2. Notices of a hearing scheduled for April 18, 2011, were sent to the parties.

On April 18, 2011, a hearing was conducted by an Administrative Law Judge ("ALJ"), and both Hanna and Eagle, on behalf of Employer, appeared by telephone. At the start of the hearing, the ALJ indicated that the issue was whether Employer discharged Hanna for just cause. Eagle testified that Hanna "wasn't discharged as much as it was job abandonment" and that "we assumed that it was a voluntary quit." Transcript at 4. The hearing was continued and the ALJ stated that a new hearing notice

2

would be sent. Notices of a second hearing scheduled for May 11, 2011, were sent to the parties.

On May 11, 2011, the hearing resumed, and Hanna and Eagle appeared by telephone. Eagle testified that he had told Hanna that he needed to provide a doctor's slip stating how long he would be unable to work and that, after that, Eagle did not hear from or see Hanna. Eagle testified that Hanna called Employer in March, spoke to a house manager, and worked out a time that Hanna would be able to go back to work, but that Eagle did not have knowledge of the call. Hanna testified that the last day he worked for Employer was December 27, 2010. Hanna testified that he "believed [he] had a job and that [he] was off with injury," that Employer "had every reason to think that [he] was returning after [his] injury had healed," and that he "confirmed [this] several times." Id. at 9. Hanna testified that he saw a doctor on December 28, 2010, and that after the appointment he called Employer, spoke with his direct manager, and stated that he had a fracture in his hand. Hanna indicated that, based upon his conversation with the manager, he believed he was on a medical leave of absence and still employed. The ALJ indicated that the testimony suggested that another issue was whether Hanna was involuntarily unemployed due to a medically substantiated physical disability. The ALJ then asked Hanna if he wanted the hearing to be continued or wanted to proceed with the hearing, and after some discussion the ALJ explained that it was Hanna's burden of proof to show that he had a medically substantiated physical disability and that he made reasonable efforts to preserve the employment relationship. Hanna stated "I would like to proceed assuming you do have Exhibit[s] A through E," and the ALJ confirmed that he

3

had the exhibits. Id. at 13. Eagle indicated that he wanted the hearing to be continued. The ALJ continued the hearing.

On May 17, 2011, notices were sent to the parties indicating that the hearing was scheduled for May 27, 2011. Employer requested a continuance, which was granted, and notices were sent to the parties indicating that the scheduled May 27, 2011 hearing date had been postponed. On May 20, 2011, notices were mailed to the parties indicating that the hearing was scheduled for June 2, 2011, at 10:45 a.m.

On June 2, 2011, the ALJ held the scheduled hearing, at which Eagle appeared by telephone and Hanna did not participate. The ALJ attempted to call Hanna at 10:48 and, when Hanna did not answer, explained to Eagle that he would wait fifteen minutes, call Hanna again, and "go ahead regardless at that point." Id. at 15. The ALJ called Hanna again at 11:00 and left a voicemail stating that the hearing would proceed, and the ALJ then conducted the hearing in Hanna's absence. Eagle testified that Hanna's supervisor did not have any communications with Hanna until Hanna informed the supervisor in March 2011 that he was ready to return to work, that the supervisor told Hanna that she would talk to Eagle and would probably be able to put him back on the schedule, and that the conversation between the supervisor and Hanna was not known by Eagle until the following week, when he instructed her that Hanna had been terminated "because we didn't know . . . what his status was as far as his hand goes." Id. at 18.

The ALJ entered a decision on June 2, 2011, which reversed the deputy's determination and concluded that Hanna was not discharged but voluntarily left

4

employment without good cause in connection to the work. The decision of the ALJ

provided in part:

> FINDINGS OF FACT: [Hanna] was employed by this employer from July 19, 2008 until the last work day on December 20, 2010. [Hanna] was a floor server, whose job duties were to provide customer service and bus tables. [Hanna] earned $4.85 per hour plus tips as a part-time employee. The parties argued differently as to the nature of [Hanna's] separation. [Hanna] argued that he was discharged. The employer argued [Hanna] voluntarily quit effective December 27, 2010.
>
> [Hanna] had sustained an injury during the weekend of December 18, or December 19, 2010. Nick Eagle, General Manager, instructed [Hanna] to go to a doctor on December 28, 2010 because [Hanna] couldn't hold a tray due to the injured hand. [Hanna] returned and stated that he had a fracture in his hand. Mr. Eagle told [Hanna] that he needed to provide a doctor's slip. [Hanna] was not subsequently seen or heard from again; although [Hanna] argued that he was in contact with Marsha Potter, Manager, and that he told Ms. Potter that his hand was fractured; that he expected to be back to work in six to eight weeks; and Ms. Potter said okay. However, Ms. Potter told Mr. Eagle that she had no communication with [Hanna] until [Hanna] said that he was ready to return to work which was on or around March 12, 2011.
>
> The employer did not receive any medical documentation from [Hanna]. Any medical documentation received would have gone into [Hanna's] file after being reviewed by Mr. Eagle. The evidence of record is not clear as to why [Hanna] voluntarily left the employment.
>
> CONCLUSIONS OF LAW: The Administrative Law Judge concludes [Hanna] voluntarily left employment without good cause within [sic] connection of the work within the meaning of Chapter 15, Section 1(a) of the Indiana Employment and Training Services Act. "A claimant who seeks unemployment compensation benefits after voluntarily terminating the employment must show that he left the employment for good cause objectively related to the employment or that he falls within a statutory exception." Louis F. Wade v. Review Board, 599 N.E.2d 630, 633 (Ind. App. 1992).
>
> In the present case, the evidence is convincing that [Hanna] manifested the requisite intention to voluntarily leave the employment by his failure to maintain contact with the employer. [Hanna] has failed his burden of proof to substantiate that he voluntarily left employment with good cause in

5

connection with the work. There is a question which remains as to whether the non-disqualification provision of Chapter 15, Section 1(c)(2) of the Indiana Employment Training Services Act applies. Chapter 15, Section 1(c)(2) of the Act states, "An individual whose unemployment is the result of medically substantiated physical disability and who is involuntarily unemployed after having made reasonable efforts to maintain the employment relationship shall not be subject to disqualification under this section for such separation." The employer was aware that [Hanna] had sustained an injury and directed [Hanna] to seek medical care. [Hanna] had told the employer that the physician had indicated a fracture to his hand. However, [Hanna] did not provide any medical documentation to the employer to substantiate the nature of the medical condition or of any restrictions that he may have been under due to any medical condition. There is insufficient evidence to substantiate that [Hanna] was involuntarily unemployed due to a medically substantiated physical disability. The non-disqualification provision does not apply.

DECISION: The deputy's initial determination dated March 21, 2011 is modified. [Hanna] was not discharged, but rather voluntarily quit and as modified is reversed to show [Hanna] voluntarily left employment without good cause in connection to the work within the meaning of Chapter 15, Section 1(a) of the Act. [Hanna's] benefit rights are suspended effective the week ending January 1, 2011 until [Hanna] had earned his weekly benefit amount or more in each of eight weeks. Penalties may be imposed on the claim.

Appellant's Appendix at 6-7; Exhibits at 35-36.

On June 9, 2011, Hanna appealed the decision of the ALJ. In his appeal, Hanna stated: "I disagree with the Judges [sic] decision because I was not present at the last hearing and did not have a chance to tell about numerous contact[s] I had with my employer prior to them firing me. The contact I had with them between when I left with injury up to when I was fired." Appellee's Appendix at 3.

On June 15, 2011, Hanna sent a fax to the Board which stated in part:

I was not aware I could provide additional information in my appeal when I had faxed my request for an appeal. I did not attend the last hearing because of a mail mix-up with my mother. The case was continued twice, rescheduled by my employer once and the rescheduled hearing was the one

> I missed and judgment went against me. I had no opportunity to explain the information most vital to proving my case. I am requesting permission to provide to you additional information in my appeal.

Id. at 5.

Hanna sent a letter to the Board, which is file-stamped as received on June 17, 2011, stating that "[u]pon checking status of my request to submit new information in seeing if it was received in a timely matter [sic] I was informed I needed to request a time extension in my appeal" and "[t]his is a formal request to be given a time extension in my case to allow me to send . . . information that was not available to the Judge." Id. at 6. On June 21, 2011, Hanna sent a fax to the Board and attached an eight-page letter describing "additional information that was not available to the Judge, due to my absence in the final telephone hearing." Id. at 8. In the letter, Hanna stated that Employer's statements that it did not hear from him after he broke his hand until March 12, 2011 were untrue as he had called Employer thirteen times and personally visited Employer approximately five times during that period. Hanna stated that he was led to "believe everything was fine until [he] received [a] voicemail on March 3rd stating [his] termination." Id. at 9. Hanna stated that he filed his initial unemployment claim that day. Hanna also attached several exhibits to his fax, which included medical records and a phone bill showing that Hanna placed calls to Employer on December 27, 2010, January 7, 17, and 27, February 21, 23, 24, and 27, and March 3, 2011. Hanna sent a letter to the Board, which is file-stamped as received on June 28, 2011, which attached a document and stated that he believes the document confirms that his unemployment was the result of a medically substantiated physical disability.

On July 6, 2011, the Board entered a decision which adopted and incorporated by reference the findings of fact and conclusions of law of the ALJ and affirmed the decision of the ALJ.

Initially, we note that *pro se* litigants are held to the same standard as trained counsel and are required to follow procedural rules. Evans v. State, 809 N.E.2d 338, 344 (Ind. Ct. App. 2004), trans. denied. In the argument section of his appellant's brief, Hanna does not cite to any authority or to the record to support his arguments. As a result, Hanna's arguments are waived. See Johnson v. State, 675 N.E.2d 678, 681 n.1 (Ind. 1996) (observing that the defendant failed to cite to the record and "[o]n review, this Court will not search the record to find grounds for reversal"); Haddock v. State, 800 N.E.2d 242, 245 n.5 (Ind. Ct. App. 2003) (noting that "we will not, on review, sift through the record to find a basis for a party's argument"); see also Cooper v. State, 854 N.E.2d 831, 834 n.1 (Ind. 2006) (holding that the defendant's contention was waived because it was not supported by citation to authority); Smith v. State, 822 N.E.2d 193, 202-203 (Ind. Ct. App. 2005) ("Generally, a party waives any issue raised on appeal where the party fails to develop a cogent argument or provide adequate citation to authority and portions of the record."), trans. denied; Ind. Appellate Rule 46(A)(8)(a) ("The argument must contain the contentions of the appellant on the issues presented, supported by cogent reasoning. Each contention must be supported by citations to the authorities, statutes, and the Appendix or parts of the Record on Appeal relied on, in accordance with Rule 22.").

Waiver notwithstanding, to the extent Hanna argues that he was entitled to a hearing, we find that Hanna waived the argument for failing to raise it in the proceedings below. In his appellant's brief, Hanna argues that the June 2, 2011 hearing took place without him and that he "was denied a reasonable right for fair hearing due to a medical emergency occurring [at] the time of the scheduled hearing on June 2." Appellant's Brief at 7. Hanna argues that he was with his two-year-old daughter at Holliday Park on the morning of June 2, 2011, that his daughter was choking, that Hanna patted his daughter on the back, and that a penny became dislodged from her throat. Hanna maintains that he then called the child's mother and his own mother to see if further actions needed to be taken. Hanna argues that he "then realized he missed the calls from the ALJ," that "[t]he whole choking incident lasted from approx. 10:40 - 11:01 the morning of June 2," that he "tried to get back in contact with the ALJ by calling her back at approx. 11:02," and that he explained the situation to the ALJ's secretary. Id. at 8. Hanna argues he called the ALJ back at approximately 11:15 and was informed that the hearing had already taken place. Hanna argues that he "was not present at the hearing due to a medical emergency" and that had he "not been to his daughter[']s aid the result would have been devastating." Id. at 9.

The Board argues that Hanna's argument that he missed the hearing due to a medical emergency is waived because he raised the argument for the first time on appeal. The Board argues that Hanna submitted five filings to the Board and that none of those filings ever mentioned a medical emergency as the reason for Hanna's absence on June 2, 2011. The Board argues that Hanna "only once attempted to justify his failure to appear

9

for the third and final hearing" and that "[i]n his second appeal letter he stated he 'did not attend the last hearing because of a mail mix-up with my mother.'" Appellee's Brief at 7 (citing Appellant's Appendix at 5). The Board further argues that it properly affirmed that Hanna failed to meet his burden of proof to show that he voluntarily left his employment without good cause in connection with the work and failed to show good cause for failing to participate in the hearing.

We observe that Hanna's argument on appeal that he was unable to attend the June 2, 2011 hearing before the ALJ by telephone because of a medical emergency involving his daughter was not raised or presented in the proceedings below or to the Board. Specifically, the record shows that Hanna did not make the claim in his original appeal to the Board from the decision of the ALJ or in any of the faxed documents or letters he filed with the Board subsequent to the hearing date.[1] Hanna has waived his argument on appeal. See Cunningham v. Review Bd. of Ind. Dep't of Workforce Dev., 913 N.E.2d 203, 205 (Ind. Ct. App. 2009) (stating that a party who fails to raise an issue before an administrative body waives the issue on appeal).

In addition, the record shows that on May 20, 2011, notices were mailed to the parties indicating that the hearing was scheduled for 10:45 a.m. on June 2, 2011. Hanna does not argue or point to the record to show that he did not have notice of the June 2, 2011 hearing date and time. Based upon the record, we cannot say that Hanna was

---

[1] It appears that the only reason Hanna provided for his absence from the June 2, 2011 hearing was in his June 15, 2011 fax to the Board, in which he stated that he "did not attend the last hearing because of a mail mix-up with [his] mother" and that "[t]he case was continued twice, rescheduled by my employer once and the rescheduled hearing was the one I missed . . . ." Appellee's Appendix at 5.

denied a reasonable opportunity for a fair hearing. See Wolf Lake Pub, Inc. v. Review Bd. of Ind. Dep't of Workforce Dev., 930 N.E.2d 1138, 1142 (Ind. Ct. App. 2010) (concluding that the appellant was not denied a reasonable opportunity to participate in a fair hearing where the appellant had actual notice of the telephonic hearing but chose to go on vacation without ensuring access to a telephone during the time of the scheduled telephonic hearing); Art Hill, Inc. v. Review Bd. of Ind. Dep't of Workforce Dev., 898 N.E.2d 363, 367-368 (Ind. Ct. App. 2008) (noting that a party to an unemployment hearing may voluntarily waive the opportunity for a fair hearing where the party received actual notice of the hearing and failed to appear at or participate in the hearing and that, although the appellant attempted to contact the ALJ, the appellant did so fifteen minutes after the scheduled beginning of the hearing and after the hearing had concluded or nearly concluded, and holding that the appellant was not denied a reasonable opportunity for a fair hearing where the ALJ could not reach the appellant by telephone at the time of the scheduled hearing).

For the foregoing reasons, we affirm the Board's determination.

Affirmed.

MAY, J., concurs.

CRONE, J., concurs with separate opinion.

11

# IN THE
# COURT OF APPEALS OF INDIANA

A.H.,                                          )
                                               )
    Appellant,                          )
                                               )
        vs.                                )     No. 93A02-1107-EX-667
                                               )
REVIEW BOARD OF THE INDIANA                    )
DEPARTMENT OF WORKFORCE                         )
DEVELOPMENT,                                    )
                                               )
    Appellee.                           )

**CRONE, Judge, concurring**

I fully concur in the majority's reasoning and result, but I write separately to express my disagreement with its disclosure of the full names of both the unemployment claimant and the employer in what I believe to be a contravention of Indiana law.

Indiana Administrative Rule 9(G)(1) says, "The following information in case records is excluded from public access and is confidential: … [(b)](xviii) All records of the Department of Workforce Development as declared confidential by Ind. Code § 22-4-19-6." Indiana Code Section 22-4-19-6 says,

> Except as provided in subsections (d) and (f) [which are not relevant here], information obtained or obtained from any person in the administration of this article and the records of the department relating to the unemployment tax or the payment of benefits is confidential and may not be published or be open to public inspection in any manner revealing the individual's or the

12

employing unit's identity, except in obedience to an order of a court or as provided in this section.

Ind. Code § 22-4-19-6(b). Finally, Administrative Rule 9(G)(4)(d) says,

> Orders, decisions, and opinions issued by the court on appeal shall be publicly accessible, *but each court on appeal should endeavor to exclude the names of the parties and affected persons, and any other matters excluded from public access,* except as essential to the resolution of litigation or appropriate to further the establishment of precedent or the development of the law.

(Emphasis added.)

As I said in my concurring opinion in *S.S. LLC v. Review Board of Indiana Department of Workforce Development*, 953 N.E.2d 597 (Ind. Ct. App. 2011), I do not see how the foregoing provisions "can be read to allow the disclosure of the full names of unemployment claimants and employers in decisions issued by this Court." *Id*. at 607 (Crone, J., concurring). Our supreme court's recent decision in *Recker v. Review Board* has not changed my mind.

In that case, the court "acknowledge[d] that the identities of the claimant and employing unit are generally subject to the confidentiality requirements prescribed in Indiana Code Section 22-4-19-6(b)" as "expressly implemented as to judicial proceedings by Indiana Administrative Rule 9(G)(1)(b)(xviii)." *Recker v. Review Bd. of Ind. Dep't of Workforce Dev.*, No. 93S02-1105-EX-285, 2011 WL 6848389, at *1 n.4 (Ind. Dec. 29, 2011). The court then said that Administrative Rule 9(G)

> further provides, however, that when information excluded from public access is presented in court proceedings open to the public, "the information shall remain excluded from public access *only* if a party or a person affected by the release of the information, prior to or contemporaneously with its introduction into evidence, affirmatively

13

requests that the information remain excluded from public access."  Adm. R. 9(G)(1.2) (emphasis added).

*Id.*  The court went on to say,

> The decisions of the ALJ and the Review Board in this case were each expressly labeled as a "Confidential Record" pursuant to Indiana Code Section 22–4–19–6.  Appellant's App'x at 2, 5.  In the course of this appeal, the Appellee's Appendix filed by the employer was identified as "Confidential," but the Appellant's Appendix filed by the employee was not so labeled, and it disclosed her full name.  Both the claimant-appellant and the Board-appellee used only initials to identify the claimant in their briefs, but the briefs of both revealed the identity of the employer.  Neither the claimant, the employer, nor the Review Board, made any affirmative request pursuant to Administrative Rule 9(G)(1.2) to continue the exclusion from public access the identities and information confidential under the statute and rule.  Pursuant to Administrative Rule 9(G)(1.2), in light of the absence of an affirmative request for continued confidentiality of the identities of the employee and the employing entity, we fully identify the parties.  As to the facts of the case that derive from the records of the Department and are discussed in this opinion, we deem such information to be public as essential to the resolution of the litigation and appropriate to further the establishment of precedent and the development of the law. Adm. R. 9(G)(3) and 9(G)(4)(d).

*Id.*

The *Recker* court's rationale for disclosing the parties' identities omits a critical component of Administrative Rule 9(G)(1.2), which reads in its entirety as follows:

> During court proceedings that are open to the public, when information in case records that is excluded from public access pursuant to this rule *is admitted into evidence*, the information shall remain excluded from public access only if a party or a person affected by the release of the information, prior to or contemporaneously with its introduction into evidence, affirmatively requests that the information remain excluded from public access.

(Emphasis added.)  Because appellate courts do not conduct trials or evidentiary hearings and thus do not admit "information in case records … into evidence," I fail to see how Administrative Rule 9(G)(1.2) can be used to justify the disclosure of parties' identities in

14

unemployment cases for the first time on appeal. Until the relevant provisions of Administrative Rule 9(G) are amended by our supreme court, I intend to continue to use initials in unemployment cases that I write.